## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FUTURE FUND, INC. | Civil Action No..: 1:25-cv-08151 |
| Plaintiff, | **AMENDED VERIFIED COMPLAINT** |
| v. | |
| NEW YORK CITY CAMPAIGN FINANCE BOARD, NEW YORK STATE BOARD OF ELECTIONS, MICHAEL L. JOHNSON, in his official capacity as Chief Enforcement Counsel for the New York State Board of Elections Division of Election Law Enforcement, KATHLEEN C. HOCHUL, in her official capacity as Governor of the State of New York, and LETITIA A. JAMES, in her official capacity as Attorney General of the State of New York, | |
| Defendants. | |

Plaintiff American Future Fund ("AFF") brings this action for declaratory and injunctive relief, and complains as follows:

## INTRODUCTION

1.      This is a pre-enforcement, First Amendment and due process challenge to New York Election Law § 14-107(a) (the "Statute" or "§ 14-107(a)"), as interpreted by Title 9, Section 6200.10(b)(1)(ii) of New York Comprehensive Code of Rules and Regulations (the "Regulation" or "NYCRR 6200.10").

2.      Section 14-107(a), as interpreted and applied by Defendants, is impermissibly vague, unconstitutionally chills AFF's First Amendment rights to engage in core political speech and association, and threatens AFF's ability to engage in constitutionally protected issue advocacy.

As a result, Section 14-107(a), as interpreted and applied by Defendants, is unconstitutional on its face as substantially overbroad, and unconstitutional as applied to AFF's proposed advertisements that AFF plans to run via television, radio, and direct mail in the New York City area, which are listed in full in paragraph 44 below (hereinafter, the "Proposed Advertisements").

3.     AFF is a 501(c)(4) corporation and was formed to provide Americans with a conservative and free market viewpoint a mechanism to communicate and advocate their views on important public policy issues facing our nation.

4.     AFF and its members are alarmed by the rapid rise of socialism in New York City and by some New Yorkers' embrace of far-left policies, such as defunding police departments and legalizing prostitution.  The increased popularity of socialism and socialist ideas in the nation's financial and cultural capital is particularly concerning to AFF and its members.

5.     While AFF would like to speak to New Yorkers on these important issues in the coming weeks, AFF does not wish to support or oppose any particular candidate.  Rather, AFF's goal is simply to educate New Yorkers on these important issues and urge all New Yorkers, including and especially those who care about these issues, to exercise their right to vote.

6.     Accordingly, AFF's Proposed Advertisements do not mention the name of, or refer to, any particular candidate for office.  Rather, the Proposed Advertisements attack socialist ideology and the policies of defunding the police and legalizing prostitution.  Some of the Proposed Advertisements also encourage all New Yorkers, and especially those concerned about these issues, to remember to vote.

7.     As explained in more detail below, under New York law, any organization engaged in "independent expenditure[s]" is subject to a number of intrusive and burdensome disclosure,

disclaimer, and reporting obligations. Specifically, organizations that make "independent expenditure[s]" are required to publicly disclosed the names of their donors.

8.      New York law defines "independent expenditure" to include advertisements conveyed to over 500 members of the general public that "refers to and advocates for or against a clearly identified candidate … on or after January first of the year of the election in which such candidate is seeking office or … [that] within sixty days before a general or special election for the office sought by the candidate … includes or references a clearly identified candidate." N.Y. Elec. Law § 14-107(a).

9.      The term "clearly identified candidate" has long been used in federal campaign finance law and has been incorporated into the campaign finance laws of dozens of states, including New York.

10.     For over fifty years, the U.S. Supreme Court has interpreted "clearly identified candidate," as used in federal campaign finance laws, to:

> require that the candidate's name, photograph or drawing, or other unambiguous reference to his identity appear as part of the communication. Such other unambiguous reference would include use of the candidate's initials (e. g., FDR), the candidate's nickname (e. g., Ike), his office (e. g., the President or the Governor of Iowa), or his status as a candidate (e. g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia).

*Buckley v. Valeo*, 424 U.S. 1, 43 n. 51 (1976); *see also FEC v. Nat'l Org. for Women*, 713 F. Supp. 428, 433 (D.D.C. 1989) ("An explicit and unambiguous reference to the candidate must be mentioned in the communication ….").

11.     This definition of "clearly identified candidate" has since been incorporated into federal regulations, *see* 11 C.F.R. § 100.17, and federal statute, *see* 2 U.S.C. § 431(18) and 52 U.S.C. § 30101(18).  Specifically, under Federal Election Commission ("FEC") regulations:

> The term *clearly identified* means the candidate's name, nickname, photograph, or drawing appears, or the identity of the candidate is otherwise apparent through an unambiguous reference such as "the President," "your Congressman," or "the incumbent," or through an unambiguous reference to his or her status as a candidate such as "the Democratic presidential nominee" or "the Republican candidate for Senate in the State of Georgia."

Title 11 C.F.R. § 100.17 (emphasis in original).

12.    Applying this traditional meaning of "clearly identified," AFF's Proposed Advertisements do not constitute an "independent expenditure" because they are classic examples of issue advocacy: they advocate against certain policies (i.e., defunding law enforcement and legalizing prostitution) and ideologies (i.e., socialism) but do not use a candidate's name, image, or otherwise contain an unambiguous reference, such as a candidate's initials, nickname, title, office, or status as a candidate.

13.    By statute, New York has adopted a definition of "clearly identified candidate" that is similar to the federal definition.  New York law specifies that "'clearly identified candidate' means that: (a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference." N.Y. Elec. Law §14-100(12).  Unlike the federal definition, however, New York does not make clear that the phrase "unambiguous reference" requires that a candidate be uniquely identified by initials, nickname, title, office, or status as a candidate.

14.    New York has compounded this ambiguity by adopting a regulation that interprets New York Election Law § 14-107(a) in a matter that is utterly vague and appears to be far broader than its federal counterpart.  As an initial matter, the Regulation makes clear that advocacy "for or against a clearly identified candidate" under Section 14-107(a) can be by *implicit* reference.  Even "in the absence of explicit words of advocacy for or against a candidate or ballot proposal," a communication can still be covered if "the expenditure, through the use of images, photos, or

language, promotes, supports, attacks, or opposes the clearly identified candidate." 9 N.Y. Comp. Codes R. & Regs. § 6200.10(b)(1)(ii)(c)(1).

15.     Further, the Regulation appears to go far beyond the well-established federal definition of "clearly identified candidate" that would require an "unambiguous reference" by a candidate's initials, nickname, title, office, or status as a candidate.  Instead, the Regulation provides a non-exhaustive list of "factors" that "shall be considered" for "purposes of determining that a communication is advocating for or against a candidate." *Id.* § 6200.10(b)(1)(ii)(c)(2). These factors include whether the communication mentions "distinctive features of a candidate's platform," *id.* § 6200.10(b)(1)(ii)(c)(2)(i), "expresses approval or disapproval for said candidate's positions," *id.* § 6200.10(b)(1)(ii)(c)(2)(ii), and "whether the issue raised in the communication has been raised as a distinguishing characteristic amongst the referenced candidates." *Id.* § 6200.10(b)(1)(ii)(c)(2)(ii).  Oddly, "whether [the communication] refers to a candidate" is a factor, but clearly not determinative. *Id.* § 6200.10(b)(1)(ii)(c)(2)(iii).  Instead, "even if some of the above factors" are or are not present "the communication must still be considered in its context before arriving at any conclusion." *Id.* § 6200.10(b)(1)(ii)(c)(4).

16.     It is utterly unclear what political communications are covered by the Regulation. Without question, it far exceeds communications that identify a particular candidate by an "unambiguous reference" such as name, image, initials, nickname, title, office, or status as a candidate.  Rather, the regulation appears to reach a broad swath of pure issue advocacy if the issues addressed could be characterized as a "distinctive features of a candidate's platform," *id.* § 6200.10(b)(1)(ii)(c)(2)(i).  The Regulation could also reach issue advertisements where "the issue raised in the communication has been raised as a distinguishing characteristic amongst the referenced candidates." *Id.* § 6200.10(b)(1)(ii)(c)(2)(iv).  The use of the passive voice here—i.e.,

"has been raised"—adds additional breadth and vagueness to the Regulation.  It seems that an issue advertisement could be covered by the Regulation, even if the issue discussed or the position criticized has not been raised by any candidate, so long as other third parties have attributed the issue or position—rightly or wrongly—"as a distinguishing characteristic" of some candidate.

17.    In short, the Regulation appears to interpret "clearly identified candidate" to cover, not only "unambiguous reference[s]" to the candidate by name, nickname, photograph, or title, but also *implicit* references to the candidate by *discussing issues or ideas* that the candidate has endorsed (or has been accused by third parties of endorsing).

18.    Given the breadth and vagueness of New York's novel interpretation of "clearly identified candidate," AFF would incur substantial legal risk if it were to run the Proposed Advertisements without complying with the burdensome and intrusive registration and disclosure requirements that New York requires of organizations engaged in "independent expenditures."

19.    In particular, because New York has abandoned the traditional meaning of "clearly identified candidate" and replaced it with a non-exhaustive, multifactor test that relies heavily on *the issues* discussed in a political advertisement, AFF is not able to discern any intelligible principle for what constitutes a "clearly identified candidate" and thus does not have fair notice of what issue advertisements it can run in New York without complying with New York's intrusive and burdensome registration and disclosure requirements. Were AFF to run the Proposed Advertisements without the declaratory and injunctive relief it now seeks, AFF would be at the mercy of Defendants, to whom New York's regulations have granted excessive discretion to enforce utterly unclear regulation of political speech.  Defendants' vague and overbroad regulation thus leaves AFF with serious uncertainty as whether it must follow New York's registration and disclosure before engaging in core political speech and creates a real, substantial, and imminent

risk that Defendants will subject AFF to investigations and/or enforcement action if AFF runs the Proposed Advertisements without first complying with New York's intrusive and burdensome registration and disclosure requirements.

20.     In addition, the Statute, as interpreted by the Regulation, covers issue advertisements that do not reference clearly identified candidates, such as AFF's Proposed Advertisements, which violates the right to freedom of speech and association guaranteed by the First Amendment.  Disclosure requirements for political speech have only been upheld when they are narrowly drawn to only cover speech about a candidate near an election.  As interpreted by the Regulation, the Statute appears to sweep in large swaths of issue advocacy, such as AFF's Proposed Advertisements, that do not reference any candidate.  None of the substantial government interests that the Supreme Court has recognized as justifying disclosure requirements for political speech—i.e., preventing quid pro quo corruption and ensuring the integrity of the electoral process—are implicated by issue advertisements that do not reference candidates.

21.     Accordingly, AFF brings this pre-enforcement to challenge the Statute, as interpreted by the Regulation, as unconstitutionally vague, both facially and as-applied, in violation of the Fourteenth Amendments and as an unconstitutional disclosure requirement for political speech, both facially and as-applied, in violation of First Amendment speech and association rights as incorporated by the Fourteenth Amendment.

22.     AFF seeks (1) a declaratory judgment declaring that N.Y. Election Law § 14-107(a), as interpreted by NYCRR § 6200.10, is unconstitutionally vague and overbroad on its face and as applied to AFF's Proposed Advertisements and, if appropriate, providing a limiting interpretation of § 14-107(a) that resolves its unconstitutional vagueness and overbreadth; (2) an injunction preliminarily and permanently enjoining Defendants from enforcing § 14-107(a), as

interpreted by the Regulation, against AFF's Proposed Advertisements; and (3) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 2201 as a challenge arising under the First and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

24.     Venue is proper in this Court under 28 U.S.C. § 1391(1) because Defendant New York City Campaign Finance Board resides and maintains its principal office in the district.  Venue in this Court is also proper under 28 U.S.C. § 1391(2) because the injury to Plaintiff's constitutional rights is occurring in the District, as AFF is currently being chilled from its concrete plans to distribute the Proposed Advertisements in Manhattan and the Bronx, within the Southern District of New York, via television, radio, and direct mail, because the advertisements that would trigger any obligation to register and disclose under New York law would be published and distributed within the Southern District of New York, and because, absent the requested relief, AFF would be forced to register as an independent expenditure committee with Defendant New York City Campaign Finance Board at their offices in Manhattan within the Southern District of New York.

## PARTIES

25.     Plaintiff American Future Fund, Inc. ("AFF"), is a 501(c)(4) non-profit organization incorporated in 2007 as an Iowa non-profit corporation.  AFF is a multi-state issue advocacy group designed to effectively communicate conservative and free market ideals to the American public.  AFF's mission is to provide Americans with a conservative and free market viewpoint a mechanism to communicate and advocate on the issues that most interest and concern

them.  For almost twenty years, AFF has engaged in issue advocacy all over the country in support of conservative and free market principles.  In fact, at various times, AFF has funded advertisements attacking socialist ideas and promoting free markets in various states across the country.  AFF receives donations, large and small, from Americans who share its mission and believe in its core principles.  AFF does not publicize the names of its donors, who largely prefer to remain anonymous.  AFF does not endorse, or coordinate with, particular candidates for public office.

26.    Defendant New York City Campaign Finance Board ("CFB") is a five-member board established by Section 1052 of the Charter of the City of New York ("the Charter").  CFB's office is located at 100 Church Street, 12th Floor, New York, New York, within the Southern District of New York. Under Section 1052(a)(15)(e) of the Charter, CFB has the power to "promulgate rules concerning the form and manner in which independent expenditures are to be reported and disclosed, the information to be reported and disclosed, the periods during which reports must be filed, and the verification required."  Section 1052(a)(15)(e) further empowers the CFB to "promulgate such additional rules as it deems necessary to implement, administer, interpret and enforce" the independent expenditure provisions of the Charter. CFB routinely brings enforcement actions against "independent spenders when they are determined to be in violation of the rules or law."  *See* https://www.nyccfb.info/follow-the-money/post-election/.

27.    Defendant New York State Board of Elections ("SBOE") is established by Title 1 of Article 3 of N.Y. Election Law.  SBOE is based in Albany, New York, but has jurisdiction to enforce election laws throughout New York, including in New York City.

28.    Defendant Chief Enforcement Counsel for the New York State Board of Elections Division of Election Law Enforcement ("DELE") is responsible for enforcing New York state

election law across the state, including in New York City.  *See* N.Y. Election Law § 3-104.  The current Chief Enforcement Counsel of DELE is Michael L. Johnson.  He is sued in his official capacity only.

29.    Defendant the Governor of the State of New York (the "Governor") is the chief executive of the State of New York, charged with the faithful execution of the laws of the State.  *See* N.Y. Const. art. IV, §§ 1, 3.  The current Governor is Kathleen C. Hochul.  She is sued here in her official capacity only.

30.    Defendant the Attorney General of the State of New York (the "Attorney General") is the head of the New York State Department of Law.  *See* N.Y. Const. art. V, § 4, N.Y. Exec. Law § 60.  The Department of Law is the state agency responsible for receiving the disclosure reports required by the Nonprofit Disclosure Provisions.  In addition, the Attorney General is charged with the administration and enforcement of the Nonprofit Disclosure Provisions.  *See* N.Y. Exec.  The Attorney General's office and the New York State Department of Law have offices in 163 West 125th Street, New York, New York, within the Southern District of New York, and routinely bring enforcement actions in Manhattan and the Bronx, within the Southern District of New York.  Letitia A. James is the current Attorney General of the State of New York.  She is sued here in her official capacity only.

## FACTUAL BACKGROUND

### A.  Statutory Scheme

31.    Election Law § 14-100(15) defines "independent expenditure committee" as a political committee that makes expenditures in support of or opposition to a candidate or candidates for public office without coordinating with the candidate or candidates or an agent of the candidate or candidates.

32.     Under Sec. 14-107(a) of the Election Law, an "independent expenditure" occurs when a communication to 500 or more members of the general public:

    (i)     irrespective of when such communication is made, contains words such as "vote," "oppose," "support," "elect," "defeat," or "reject," which call for the election or defeat of the clearly identified candidate

    (ii)    refers to and advocates for or against a clearly identified candidate or ballot proposal on or after January first of the year of the election in which such candidate is seeking office or such proposal shall appear on the ballot, or

    (iii)   within sixty days before a general or special election for the office sought by the candidate or thirty days before a primary election, includes or references a clearly identified candidate.

33.     Under N.Y. Election Law § 14-100(12), a "'clearly identified candidate' means that (a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference."

34.     "Independent expenditure committees" operating in New York City and making "independent expenditures" concerning "clearly identified" candidates for New York City offices are required to register with and make disclosures to Defendant New York City CFB.  Rules adopted by the New York City CFB define "clearly identified candidate" identically to the New York State definition.  Under Sec. 14-01 of the Rules of the New York City CFB, "'clearly identified' means: (1) the name of the candidate or ballot proposal appears; (2) a photograph or drawing of the candidate appears; or (3) the identity of the candidate or ballot proposal is otherwise apparent by unambiguous reference."  Accordingly, if AFF is required to register as an "Independent Expenditure committee" with Defendant SBOE based on running the Proposed Advertisements in New York City, AFF will necessarily also have to register as an "Independent Expenditure committee" with Defendant CFB and make required disclosures to Defendant CFB.

35.     As explained in detail above, the Regulation provides an extremely broad and utterly vague interpretation of "independent expenditure" under Election Law § 14-100(12).

36.     If an entity, such as the AFF, makes "Independent Expenditures" under Election Law § 14-100(12), it must register with the SBOE as an "Independent Expenditure committee" pursuant to § 14-107(3), and likewise register with CFB as an "Independent Expenditure committee."

37.     As part of that registration process, an "Independent Expenditure committee" has to comply with several statutory requirements.  For instance, it must:

    a.  identify the name address, occupation and employer of any individual who exerts operational control over the Independent Expenditure committee;
    b.  state the name, address, occupation and employer of any salaried employee of the Independent Expenditure committee;
    c.  disclose whether any of these individuals had, over the previous two years, worked or consulted for candidate, party, or constituted committees; and
    d.  disclose whether they are part of a candidate's immediate family.

38.     Independent Expenditure committees, like other New York State political committees, are required to make January and July periodic reports with the SBOE and must make all applicable pre- and post-primary election and general election reports with the NYSBOE.

39.     In addition, and unlike other New York State political committees, Independent Expenditure committees, pursuant to § 14-107(4)(a) and (b), must file reports weekly and even within 24 hours of receiving certain contributions or making certain expenditures.

40.     The weekly disclosures are required to be made year-round for:

    a.  Contributions of $1,000 or more;
    b.  Expenditures of over $5,000;
    c.  Liabilities incurred that are greater than $5,000; and
    d.  Paid Internet or digital advertisement expenditures of over $500.

41.     Within thirty days of a primary, general or special election, Independent Expenditure committees must make disclosures with the SBOE within 24-hours of:

    a.  The receipt of a contribution of $1,000 or more; and
    b.  Any expenditures, including paid Internet or digital advertisements, of over $5,000.

42.     Importantly, the SBOE makes publicly available the names and addresses of every person who donates $1000 or more to a registered Independent Expenditure committee.

43.     In addition, as with other political committees, Independent Expenditure committees, on their advertisements, are required by Election Law Sec. 14-106 to state their identity as the entity paying for and disseminating the advertisement.  Independent Expenditure committees must additionally state that their advertisements have not been authorized by any candidate or candidate's committee.

**B.  AFF's Proposed Advertisements**

44.     As soon as possible, AFF would like a determination of its legal obligations with respect to specific communications so that it is able to plan and implement its constitutionally protected political speech for the next month.

45.     In particular, AFF plans to run the following Proposed Advertisements via television, radio, and direct mail in the New York City area:

   a. Expecting the trip to LaGuardia to be traffic-free is a bad bet.  Expecting Socialism to improve NYC?  That's a worse bet.  Socialist plans to cut police funding won't keep you safe.  Socialist assaults on private employers won't protect your job.  And Socialist spending sprees won't make your taxes any less painful. Don't be fooled. Socialist promises sound sweet.  But Socialist reality is enough to make you sick.

   b. The Democratic Socialists of America, an extremist political organization, seeks to control the future of NYC.  They want to defund and ultimately eliminate the police and prisons, decriminalize all drugs, no matter how dangerous, and radically change our economic system.  The only way to stop them is to vote.

   c. Here in New York, you don't have to be Sarah Palin to see New Jersey from your home.  But some are suggesting the city should massively increase taxes to make the burden for New York small businesses 60% higher than in neighboring New Jersey.  Employers and jobs are going to disappear and working-class New Yorkers are going to be hurt the most.  The only way to stop these policies is to vote.

   d. There's so much at stake this year.  Extremists are trying to push candidates for office to embrace policies that would spell the end of New York.  Higher taxes will make New York less affordable, defunding the police will make it dangerous, and

embracing extremism will make people want to leave.  Stand up to extremism – vote at your earliest opportunity, in-person beginning on October 25.

e.  They call themselves the DSA — but behind the name is an agenda that would remake our city. Defunding the police. Legalizing sex work. Reshaping our economy with reckless policies.  This isn't the future New Yorkers want.  The only way to stop extremists is to vote.

f.  Socialism is creeping into New York City.  They promise fairness, but what they deliver is higher taxes, fewer choices, and a weaker economy.  If we don't act, this becomes our reality.  The future of our city is at stake — stop socialism.  Go vote.

g.  They pretend it would be progress.  But what socialism really means is higher taxes — on families, on small businesses, on the people who make New York run.  The DSA's plan would drain paychecks, crush jobs, and drive even more families out of the city.  New Yorkers already pay more than enough.  We can't afford their so-called revolution.  Protect your paycheck.  Protect your future.  Stand up for New York — vote.

h.  They say it's empowerment.  But the truth is darker.  The DSA wants to legalize prostitution — opening the door to human trafficking, exploitation, and crime in our neighborhoods.  Is this the future we want for our daughters, our streets, our city?  New York should protect the vulnerable, not put them at greater risk.  Don't let this reckless idea become law.  Stand up for New York.  Vote.

i.  The DSA isn't just another group.  They're pushing an extremist vision: higher taxes, defunded police, legalized prostitution, reckless policies that put ideology before people.  New Yorkers didn't ask for this — and we don't have to accept it.  The future of our city is on the line.  Stop the extremists.  Protect New York.  Vote.

j.  They call it reform.  But it means fewer police, weaker enforcement, and more criminals back on the streets.  Families are left to wonder if the subway is safe, if their kids can walk home at night.  This isn't progress — it's chaos.  New Yorkers deserve better.  Protect our neighborhoods.  Stop the radical agenda.  Vote.

k.  Their agenda is extreme: higher taxes, defunded police, legalized prostitution, reckless economic policies.  They call it progress.  We call it dangerous.  New Yorkers didn't ask for this — and we don't have to accept it.  The future of our city is on the line.  Stop the extremists.  Protect New York.  Vote.

**C.  AFF's Faces a Substantial Risk of Having To Either Register With and Disclose to Defendants or Face an Enforcement Action from Defendants, and this Risk Is Chilling AFF's First Amendment Rights.**

14

46.     Pursuant to New York's overbroad and utterly vague regulations, AFF's Proposed Advertisements, like nearly any issue ad, could be considered an "Independent Expenditure" under New York law, requiring AFF to make the appropriate filings, reports and/or disclosures with the SBOE as summarized above.

47.     Should the AFF be deemed to be an unregistered Independent Expenditure committee, it would face an enforcement action from Defendants.

48.     Enforcement proceedings may be instituted against AFF under Election Law Secs. 14-107(8) and 14-126.

49.     The Enforcement Counsel and the SBOE have a history of aggressively enforcing the provisions of the Election Law, Election Law Article 14, and/or Election Law Article 17.

50.     AFF is likely to be the subject of an enforcement proceeding should the Enforcement Counsel or the New York State Board of Elections believe that AFF has violated the aforementioned provisions of Election Law Article 14 regarding independent expenditures.

51.     Without a declaratory judgement and injunctive relief, AFF would be forced to curtail its messaging or not speak at all for fear of an enforcement action being taken by Defendants.

52.     Because Defendant CFB enforces parallel statutes and regulations to Defendant SBOE and typically follows SBOE's interpretations of those statutes and regulations, if AFF were to run the Proposed Advertisements, AFF would likely be subject to CFB's parallel independent expenditure reporting and disclosure requirements.

53.     In particular, pursuant to Chapter 14 of the Rules of the CFB, Independent Expenditure committees must make certain reports and disclosures with the CFB if the independent expenditures involve municipal races in the City of New York.

54.     Section 14-02 of the CFB Rules provide for what must be disclosed in the CFB filing by Independent Expenditure committees.  This includes details on contributors to the Independent Expenditure committee as well as expenditures by the Independent Expenditure committee.  Section 14-03 of the Rules of the CFB provide for the timing of when disclosures must be made to the CFB by independent expenditure committees.  Finally, Sec. 14-04 of the Rules of the CFB establish the attribution requirements that must appear on or with advertisements made by Independent Expenditure committees.

55.     Entities that violate the CFB's Rules on independent expenditures are subject to enforcement actions and penalties.  Enforcement of these Rules is done pursuant to Sections 10-03, 14-08, 14-09, 15-06, and Chapter 12 of the CFB Rules.

56.     Accordingly, running the Proposed Advertisements in New York City, without relief from this Court, would require AFF to either make burdensome and intrusive disclosures to CFB in Manhattan or face an enforcement proceeding from CFB in Manhattan.

57.     The ambiguous, overbroad regulations regarding, among other provisions, the definition of clearly identified candidates make it impossible for Plaintiff to know whether its Proposed Advertisements would trigger the requirement that it register and disclose as an Independent Expenditure committee.

58.     In the absence of a declaratory judgment, AFF would be forced to curtail its speech on significant issues facing New Yorkers.

59.     Without an immediate ruling from this Court, AFF will not have the necessary time to plan its activities and will be forced to curtail its speech for fear of government enforcement action.  AFF will face a credible threat of prosecution if it engages in speech that is protected by the First Amendment.

60.     AFF is chilled from proceeding with its planned First Amendment activities because it reasonably believes that running the Proposed Advertisements will subject AFF to burdensome investigations and enforcement actions from Defendants.  AFF is also chilled from proceeding because, if Defendants subsequently determine that AFF engaged in "independent expenditures," AFF would be in violation of disclosure, disclaimer and reporting requirements associated with the proposed communications and would be required to disclose for public view sensitive information, including the identities of its donors.

61.     The chilled speech of AFF constitutes irreparable harm because it entails the loss of First Amendment rights.  There is no adequate remedy at law.

62.     The balance of equities favor AFF because AFF is suffering an ongoing chilling of its First Amendment rights whereas there is no harm to Defendants in being prevented from enforcing an illegal and unconstitutional law and regulation.

63.     The public interest favors an injunction that would clarify the law in this important area that is fundamental to free speech and democracy.

## COUNT 1
### (Void for Vagueness in Violation of the First and Fourteenth Amendment)

64.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

65.     The void-for-vagueness doctrine is a well-established principle of constitutional law that requires regulations, in order to comply with the First and Fourteenth Amendment, to provide fair notice of what conduct is prohibited.  A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010).

66.    The vagueness standard is particularly stringent when, as here, it implicates First Amendment rights. When a statute "is capable of reaching expression sheltered by the First Amendment," the vagueness doctrine "demands a greater degree of specificity than in other contexts." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010).

67.    Such stringency is especially warranted in the context of political speech, where the regulation's vagueness creates a significant risk of chilling protected expression and undermining the robust public discourse that the First Amendment was designed to protect.  "A person seeking to communicate his or her point of view on a public issue -- to engage in classic issue advocacy -- [must be able to] know in advance whether the State will read the communication to be an implicit endorsement of a candidate who, to a greater or lesser extent, agrees with or supports action that conform to the speaker's view and will therefore be subject to penalty under the statute." *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 387-88 (2d Cir. 2000).

68.    Plaintiff brings this claim pursuant to 42 U.S.C. 1983 and 28 USC § 2201 because Defendants' conduct and overly vague regulation have subjected AFF to a reasonable threat of enforcement actions and chilled AFF's protected political speech, thereby depriving AFF of its rights under the Constitution.  A declaratory judgment is necessary to restore the clarity necessary for AFF to exercise its free speech rights under the First Amendment and to provide AFF with the requisite notice required by the Fourteenth Amendment's Due Process Clause.

69.    Defendants have promulgated NYCRR 6200.10, which purports to interpret and implement § 14-107.  The Statute uses the term "clearly identified candidate," but the Regulation expands the settled definition of that phrase as enunciated in *Buckley v. Valeo*, with a vague non-exhaustive list of "factors" to be considered.  The Regulation is also impermissibly vague because it provides that a communication can constitute an "independent expenditure" even "in the absence

of explicit words of advocacy for or against a candidate or ballot proposal." In stark contrast to *Buckley*'s interpretation of "clearly identified candidate" as requiring an "unambiguous reference" to a candidate by name, title, initials, nickname, or status as a candidate, the Regulation vaguely implies that a communication may be covered by the Statute if *implicitly* references a candidate "through the use of images, photos, or language," including by *implicit references* made by criticizing *policy positions* that a candidate has taken in the past (or that third parties have, rightly or wrongly, accused a candidate of taking in the past). *See* 9 N.Y. Comp. Codes R. & Regs. § 6200.10(b)(1)(ii)(c)(1).

70.     The Regulation is unconstitutionally vague on its face because it does not provide fair notice or any intelligible principle of what constitutes a reference to a "clearly identified candidate," leaving individuals and entities to guess at the Statute and Regulation's meaning and application. It also grants excessive enforcement discretion to regulators, such as Defendants, and fails to provide a definition or interpretive guidance sufficient to allow a person of ordinary intelligence to understand what conduct is prohibited or required.

71.     The Regulation is overbroad on its face because, even if its application is clear to speech that explicitly and unambiguously references a candidate, it is vague and its application is utterly unclear to a wide swath of issue advertisements that concern any issue that could be characterized as a "distinctive features of [any] candidate's platform," *id.* § 6200.10(b)(1)(ii)(c)(2)(i), or an issue is that "has been raised" by any third party "as a distinguishing characteristic" of any candidate. *Id.* § 6200.10(b)(1)(ii)(c)(2)(iv).

72.     For instance, since at least 2015, President Trump has made strict enforcement of immigration laws a "distinctive feature" and "distinguishing characteristic" of his "platform." Does that mean that in any issue advertisement that argues for or against strict immigration

enforcement is an "independent expenditure" under New York law, simply because President Trump is on the ballot that year?  Further, even for years where President Trump is not on the ballot, would such an advertisement still be an "independent expenditure" if one or more local or congressional candidates strongly supports President Trump's immigration enforcement measures and has pledged to cooperate with them (or, conversely, if another candidate has strongly opposed President Trump's immigration enforcement policy and has pledged to thwart them)?

73.     Similarly, Governor Hochul, over the past year, has made a ban on cell phones in schools a major part of her agenda.  This would seem to put any issue advocacy group in peril were it to run issue ads speaking for or against this policy.  One could think of a thousand other examples of issues ads that could arguably constitute "Independent Expenditures" under New York's broad and vague Regulation.

74.     The Regulation is also unconstitutionally vague as applied to AFF's Proposed Advertisements because it is utterly unclear whether the Statute, as interpreted by the Regulation, applies to the Proposed Advertisements.  AFF cannot know if its Proposed Advertisements, in which it discusses political issues such as socialism, police funding, or legalized prostitution, will fall within the scope of the Statute, because the Regulation includes broad language stating that "an issue raised" in a communication may bring that communication within the Statute merely if such issue "has been raised as a distinguishing characteristic" of any candidate by *anyone* (regardless of whether the charge is true, and regardless of whether the candidate has characterized him/herself that way).

75.     On the one hand, the Proposed Advertisement ***should not*** be covered by the Statute. There are any number of people in New York City—from political parties and politicians to actors and influencers—who have promoted socialism and socialist ideas of one form or another for a

generation. *See, e.g.*, Joshua Chaffin, *The Rise of America's Young Socialists—From the 2008 Financial Crisis to Mamdani,* Wall S. J. (Sept. 27, 2025) (describing how Zoran Mamdani's primary victory reflected "the flowering" of a larger socialist "movement that began to gestate nearly 20 years ago, when the misery of the financial crisis proved formative for a generation then just coming of age" and noting that "Veterans of Occupy Wall Street, the protest movement that sprang up in response to the 2008 crisis, now hold senior roles in groups like the Working Families Party, which gave Mamdani a vital early endorsement, and the Justice Democrats."). Alarmingly, "[a] recent survey by the Cato Institute and YouGov found that 62% of Americans ages 18 to 29 hold a 'favorable view' of socialism." *Id*. A critique of those ideas does not unanimously refer to any one particular candidate for public office. And no candidate, to AFF's knowledge, has adopted defunding police departments or legalizing prostitution as part of their official "platform." Still, these destructive policy proposals are currently being discussed in New York City and AFF has every right to participate in these important public policy debates.

76.    However, the Regulation is so broad and vague that Defendants have excessive discretion to read it to cover the Proposed Advertisements. Socialism could certainly be deemed a "distinctive feature" of Assemblyman Zohran Mamdani's platform in his campaign for mayor of the City of New York (or, for that matter, of Governor Cuomo's platform). And, while no candidate has raised defunding the police or legalizing prostitution as "a distinguishing characteristic" of *their own* platform, those issues—along with pretty much every other issue— surely "have been raised" by third parties "as a distinguishing characteristic" of a candidate's platform. Indeed, it is hard to think of an election in the last five years where the accusation of being a socialist or wanting to "defund the police" has not "been raised" about one candidate or the other.

77.     The vagueness of the Regulation has caused or will cause AFF to chill its speech and refrain from engaging in robust political discourse.  The broad, ambiguous language, including "issue raised" and "distinguishing characteristic" leave AFF unable to determine whether its communication will be viewed as discussing purely political issues, such as socialism, or deemed a reference to a candidate.  This uncertainty forces AFF to refrain from engaging in constitutionally protected political speech out of fear of enforcement actions.

78.     The chilling effect is particularly severe because the lack of clarity in the Regulation invites arbitrary and discriminatory enforcement by Defendants, further violating AFF's rights under the Due Process Clause of the Fourteenth Amendment.

79.     As a direct and proximate result of Defendants Regulations and threatened unlawful enforcement of the Statute, AFF has suffered and will continue to suffer irreparable harm in the form of self-censorship.

80.     Defendants have acted under color of law.

81.     Accordingly, AFF is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02, as well as attorneys' fees under 42 U.S.C. § 1988, and such other and further relief as this Court may deem just and proper.

## COUNT II
### (First Amendment Right to Freedom of Speech and Association)

82.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

83.     Whenever a communication constitutes an "independent expenditure," the speaker is required to comply with burdensome disclosure and disclaimer requirements, including disclosing all persons who have donated over $1000 to the speaker within the last year, irrespective

of whether those donors were involved in the particular communication.  *See* supra, paragraphs 30–42.

84.    Disclosure and disclaimer requirements are subject to "exacting scrutiny" under the First Amendment.  *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 50 (2010).  As a result, in order to justify such requirements, the government must show a "substantial relation between the disclosure requirement and a sufficiently important governmental interest."  *Id*.  (quotations omitted).

85.    Although the government possesses significant interests in requiring certain kinds of disclosures to prevent quid pro quo corruption and to ensure the integrity of the electoral process, those interests cannot possibly justify applying the Statute to the issue advertisements that do not explicitly and unambiguously reference any candidate for public office.

86.    Accordingly, the Statute, as interpreted by the Regulation, is unconstitutionally overbroad because it not only regulates speech for or against candidates for public office, but also infringes on core political speech that does not have any nexus to elections or combatting public corruption.

87.    Moreover, Defendant has not created any sort of legislative or administrative record to support any finding that applying the Statute to issue advertisements that merely mention issues that may be associated with candidates, but do not otherwise refer to candidates, is necessary to prevent quid pro quo arrangements between politicians and donors or to protect the integrity of the electoral process.

88.    Applying the Statute and Regulation to genuine issue advocacy severely burdens the First Amendment rights to freedom of speech and association of issue advocacy groups, such as AFF, by requiring them to register with Defendants and publicly disclose their identities and

those of their donors in order to engage in core political speech and to associate for the purposes of speaking on matters of public concern.

89.     Because the Statute, as interpreted by the Regulation, could reach a substantial number of genuine issue advertisements, as compared to the Regulation's legitimate applications to speech that unambiguously references a clearly identifiable candidate, it is unconstitutionally overbroad.

90.     In addition, the Statute, as interpreted by the Regulation, is unconstitutional as applied to AFF's Proposed Advertisements because requiring AFF to register and disclose its donors to engage in issue advocacy that does not clearly refer to any particular candidate does not further any substantial government interest.

91.     AFF has prepared the Proposed Advertisements to speak to important political and ideological issues affecting New York and the nation.  Given the trend of young Americans gravitating towards socialism, it is particularly important for AFF's message to reach young people in New York City, who exercise a disproportionate impact on the political culture of America's youth.

92.     But for operation of the law, AFF would have already run the Proposed Advertisements in New York.  AFF has not done so because it reasonably believes that it would face investigations and enforcement actions from Defendants if it did so without complying with New York's burdensome registration and disclosure requirements.

93.     AFF does not wish to comply with New York's burdensome registration and enforcement requirements because AFF's donors reasonably fear physical and professional reprisals, including threats, harassment, and reprisals, as well as economic retaliation, for their political speech and associations.  This fear is reasonable in the current political climate in which

ideologically motivated violence against conservatives is on the rise. In addition, New York's disclosure requirements would severely burden AFF's right to associate with its donors and potential donors by discouraging donations from persons who do not wish to be publicly associated with conservative political activism.

94. By requiring AFF to disclose its donors simply because it proposes to speak on issues of local and national importance, AFF and its contributors' ability to associate and speak through the act of contributing are unconstitutionally and unlawfully abridged. Accordingly, AFF asserts its own First Amendment rights as well as the First Amendment rights of its donors to free speech and free association. *See NAACP v. Alabama*, 357 U.S. 449, 459 (1958).

95. Defendants have acted under color of law.

96. Accordingly, AFF is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02, as well as attorneys' fees under 42 U.S.C. § 1988, and such other and further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1. A declaratory judgment declaring that N.Y. Elec. Law § 14-107(a), as interpreted by 9 N.Y. Comp. Codes R. & Regs. § 6200.10(b)(1)(ii)(c), is unconstitutionally vague and overbroad on its face and as applied to AFF's Proposed Advertisements and, if appropriate, providing a limiting interpretation of N.Y. Elec. Law § 14-107(a) that resolves its unconstitutional vagueness and overbreadth;

2. An injunction preliminarily and permanently enjoining Defendants from enforcing N.Y. Elec. Law § 14-107(a) against AFF's Proposed Advertisements;

3. Reasonable attorneys' fees and costs;

4.  Any other relief that the Court deems just and appropriate.

Respectfully submitted,

By:    /s/ Kellen Dwyer

Kellen S. Dwyer
N.Y. Bar No. 4796686
Jason B. Torchinsky*
D.C. Bar No. 976033
Andreas N. Episkopos*
D.C. Bar No. 90033371
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
2300 N Street NW,
Suite 643
Washington, D.C. 20037
kdwyer@holtzmanvogel.com
jtorchinsky@holtzmanvogel.com
aepiskopos@holtzmanvogel.com
Phone: (202) 737-8808

Susan L. Greene
NY Bar No. 4687349
Joeseph T. Burns
NY Bar No.  4411666
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
5360 Genesee Street, Suite 203
Buffalo, NY 14026
sgreene@holtzmanvogel.com
jburns@holtzmanvogel.com
Phone: (716) 647-6103

*Motion for pro hac vice admission pending*

## <u>VERIFICATION</u>

I, Nick Ryan, declare as follows:

1.  I am the founder and CEO of American Future Fund, Inc.

2.  I have personal knowledge of American Future Fund, Inc., and its operations, including those set out in this Amended Complaint, and if called upon to testify, I would testify competently as to the matters stated herein.

3.  I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Amended Complaint concerning The American Future Fund, Inc., are true and correct.

Executed this 2nd day of October, 2025

Nick Ryan
Founder & CEO
American Future Fund, Inc.