UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FUTURE FUND, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　　-v.-<br><br>NEW YORK STATE BOARD OF<br>ELECTIONS, et al.,<br><br>　　　　　　　　　　Defendants. | 25 Civ. 8151 (JHR)<br><br><u>OPINION & ORDER</u> |

JENNIFER H. REARDEN, District Judge:

　　　　Plaintiff American Future Fund, Inc. ("AFF") moves to preliminarily enjoin Defendants from enforcing New York's disclaimer and disclosure requirements, pursuant to New York Election Law Sections 14-100, 14-106, 14-107, *et seq.* and title 9, New York Codes, Rules and Regulations ("NYCRR"), Section 6200.10, in connection with several proposed advertisements addressing political issues in New York City. *See* ECF No. 9 (Pl. Br.) at 9. The motion challenges Section 14-107(1)(a), as interpreted by 9 NYCRR § 6200.10, as unconstitutionally vague, as applied, in violation of the Fourteenth Amendment, and as an unconstitutional disclosure requirement, as applied, in violation of First Amendment speech and association rights. *See id.* at 14; October 16, 2025 Hr'g. ("PI Hearing") Tr. at 7:24-8:9 (describing facial invalidation as the relief ultimately sought, in contrast with this "narrow request for a preliminary injunction, related to 11 particular ads"). On October 24, 2025, Defendants New York State Board of Elections ("BOE") and BOE's Chief Enforcement Counsel agreed, subject to certain conditions and limitations, that proposed advertisements 1, 3, 4, 6, 10, and 11 would

not trigger the Statute's disclaimer and disclosure requirements.[1]  *See* ECF No. 32 at 1.  Plaintiff

withdrew its motion as to those advertisements, limiting the motion to proposed advertisements

2, 5, 7, 8, and 9.  *See id.* at 2.  For the reasons stated herein, Plaintiff's motion is DENIED.[2]

---

[1] The proposed advertisements that are no longer in contention are as follows:

1. Expecting the trip to LaGuardia to be traffic-free is a bad bet. Expecting Socialism to improve NYC? That's a worse bet. Socialist plans to cut police funding won't keep you safe. Socialist assaults on private employers won't protect your job. And Socialist spending sprees won't make your taxes any less painful. Don't be fooled. Socialist promises sound sweet. But Socialist reality is enough to make you sick.

3. Here in New York, you don't have to be Sarah Palin to see New Jersey from your home.  But some are suggesting the city should massively increase taxes to make the burden for New York small businesses 60% higher than in neighboring New Jersey. Employers and jobs are going to disappear and working-class New Yorkers are going to be hurt the most. The only way to stop these policies is to vote.

4. There's so much at stake this year.  Extremists are trying to push candidates for office to embrace policies that would spell the end of New York. Higher taxes will make New York less affordable, defunding the police will make it dangerous, and embracing extremism will make people want to leave. Stand up to extremism – vote at your earliest opportunity, in-person beginning on October 25.

6. Socialism is creeping into New York City. They promise fairness, but what they deliver is higher taxes, fewer choices, and a weaker economy. If we don't act, this becomes our reality. The future of our city is at stake — stop socialism. Go vote.

10. They call it reform. But it means fewer police, weaker enforcement, and more criminals back on the streets. Families are left to wonder if the subway is safe, if their kids can walk home at night. This isn't progress — it's chaos. New Yorkers deserve better. Protect our neighborhoods. Stop the radical agenda. Vote.

11. Their agenda is extreme: higher taxes, defunded police, legalized prostitution, reckless economic policies. They call it progress. We call it dangerous. New Yorkers didn't ask for this — and we don't have to accept it. The future of our city is on the line. Stop the extremists. Protect New York. Vote.

[2] The parties dispute whether the Governor and the Attorney General would properly be subject to the requested injunction.  *See, e.g.*, PI Hearing Tr. at 35:10-13.  Because the Court has denied the PI Motion, this matter does not require resolution.

# I.    BACKGROUND[3]

## A.  Proposed Advertisements

Plaintiff AFF, a 501(c)(4) non-profit organization incorporated in Iowa in 2007, is a multi-state issue advocacy group.  ECF No. 4 (Amended Complaint or AC) ¶ 25.  "AFF's mission is to provide Americans [who hold a] conservative and free market viewpoint[,] a mechanism to communicate and advocate on the issues that most interest and concern them."  *Id.* "AFF has funded advertisements attacking socialist ideas and promoting free markets in various states across the country."  *Id.*  AFF does not publicize the names of its donors, who largely prefer to remain anonymous.  *Id.*

AFF wishes to run the following advertisements ("Proposed Advertisements") via television, radio, and direct mail in the New York City area in the coming weeks, AC ¶¶ 5, 44-45:

2.    The Democratic Socialists of America, an extremist political organization, seeks to control the future of NYC. They want to defund and ultimately eliminate the police and prisons, decriminalize all drugs, no matter how dangerous, and radically change our economic system. The only way to stop them is to vote.

5.    They call themselves the DSA — but behind the name is an agenda that would Remake our city. Defunding the police. Legalizing sex work. Reshaping our economy with reckless policies. This isn't the future New Yorkers want. The only way to stop extremists is to vote.

---

[3] "When considering a motion for a preliminary injunction, unlike a motion to dismiss," the Court "need not accept as true the well-pleaded allegations in Plaintiff['s] [Amended] [C]omplaint."  *Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 457, 469 (S.D.N.Y. 2020).  Instead, the Court may "consider the entire record including affidavits and other hearsay evidence,"  *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016).  Here, the parties have not submitted factual affidavits or declarations. Accordingly, the Court "draw[s] the factual background from Plaintiff's . . . Amended Complaint."  *Wang v. Bank of Am. Corp.*, No. 23 Civ. 4508 (VSB), 2025 WL 2611410, at *1 n.1 (S.D.N.Y. Sept. 10, 2025).  And although the Court "assume[s] the truth of these facts for the purposes of deciding the present motion," it "make[s] no factual findings, and nothing in this Opinion & Order should be construed as making such findings."  *Id.* (denying motion for preliminary injunction).

7.     They pretend it would be progress. But what socialism really means is higher taxes — on families, on small businesses, on the people who make New York run. The DSA's plan would drain paychecks, crush jobs, and drive even more families out of the city. New Yorkers already pay more than enough. We can't afford their so-called revolution. Protect your paycheck. Protect your future. Stand up for New York — vote.

8.     They say it's empowerment. But the truth is darker. The DSA wants to legalize prostitution — opening the door to human trafficking, exploitation, and crime in our neighborhoods. Is this the future we want for our daughters, our streets, our city? New York should protect the vulnerable, not put them at greater risk. Don't let this reckless idea become law. Stand up for New York. Vote.

9.     The DSA isn't just another group. They're pushing an extremist vision: higher taxes, defunded police, legalized prostitution, reckless policies that put ideology before people. New Yorkers didn't ask for this — and we don't have to accept it. The future of our city is on the line. Stop the extremists. Protect New York. Vote.

## B.  New York Election Law

The New York City general election is scheduled for November 4, 2025.[4]  *See* N.Y. State Bd. of Elections, *Upcoming Elections*, at https://elections.ny.gov/.  Early voting began on October 25, 2025.  *Id.*  Defendant BOE enforces election laws throughout New York, including in New York City.  AC ¶ 27.  Section 14-107 of the New York State Election Law (the "Statute") requires certain disclaimers and disclosures in connection with an "independent expenditure," defined as a communication that:

---

[4] The candidates for New York City mayor are Zohran Mamdani, Curtis A. Sliwa, Andrew Cuomo, Irene Estrada, and Joseph Hernandez.  Eric Adams and Jim Walden withdrew from the race but remain on the ballot.  *See* N.Y. State Bd. of Elections, *List of Candidates*, at https://vote.nyc/page/list-candidates; *see also Liu v. Hochul*, No. 24 Civ. 5137 (DEH), 2025 WL 1070357, at *2 n.5 (S.D.N.Y. Apr. 9, 2025) (taking judicial notice of information provided on the New York State Board of Elections website at https://elections.ny.gov); *Piccolo v. N.Y.C. Campaign Fin. Bd.*, No. 05 Civ. 7040 (GBD), 2007 WL 2844939, at *2 n.2 (S.D.N.Y. Sept. 28, 2007) (noting that the court would take judicial notice of "matters in the public record . . . such as election dates and results"); *see generally* Fed. R. Evid. 201(b)(2) (stating that a court may take judicial notice of any fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

(i)      irrespective of when such communication is made, contains words such as "vote," "oppose," "support," "elect," "defeat," or "reject," which call for the election or defeat of the clearly identified candidate,

(ii)     refers to and advocates for or against a clearly identified candidate or ballot proposal on or after January first of the year of the election in which such candidate is seeking office or such proposal shall appear on the ballot, or

(iii)    within sixty days before a general or special election for the office sought by the candidate or thirty days before a primary election, includes or references a clearly identified candidate.

N.Y. Elec. L. § 14-107(1)(a).  "[C]learly identified candidate means that: (a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference."  *Id.* § 14-100(12).

The BOE has implemented regulations "regarding compliance with Independent Expenditure disclosure."  9 NYCRR § 6200.10 (the "Regulation").  The Regulation defines certain phrases in the Statute, including, as relevant here, "Clearly Identified Candidate" (which appears in subsections (i), (ii), and (iii) of the Statute) and "Advocates for or Against" (which appears only in subsection (ii) of the Statute).  *Id.* § 6200.10(b).  The Regulation's definition of "Clearly Identified Candidate" is identical to that in the Statute: "Clearly Identified Candidate means that: (i) the name of the candidate involved appears; (ii) a photograph or drawing of the candidate appears; or (iii) the identity of the candidate is apparent by unambiguous reference."  *Id.* § 6200.10(b)(3) (citing N.Y. Elec. L. § 14-100(12)).

Although the Statute does not define "Advocates for or Against," *see generally* N.Y. Elec. L. § 14-100 ("Definitions"), the Regulation provides as follows:

(1) For purposes of this regulation Advocates for or Against means—in the absence of explicit words of advocacy for or against a candidate or ballot proposal— that the expenditure, through the use of images, photos, or language, promotes,

supports, attacks, or opposes the Clearly Identified Candidate or ballot proposal.

(2) For purposes of determining that a communication is advocating for or against a candidate or ballot proposal, the following factors shall be considered, but shall not be limited to:

    (i)    whether it identifies a particular candidate by name or other means such as party affiliation or distinctive features of a candidate's platform or biography or identifies a ballot proposal;

    (ii)    whether it expresses approval or disapproval for said candidate's positions or actions or for a ballot proposal;

    (iii)    whether it refers to a candidate or ballot proposal and is part of an ongoing series by the group on the same issue and the expenditure is made on or after January 1st of the year of the election in which such candidate is seeking office or such proposal shall appear on the ballot;

    (iv)    whether the issue raised in the communication has been raised as a distinguishing characteristic amongst the referenced candidates; and

    (v)    whether its timing and the identification of the candidate are related to a vote on legislation or a position on legislation by an officeholder who is also a candidate and is made on or after January 1st of the year of the election in which such candidate is seeking office.

9 NYCRR § 6200.10 (b)(1)(ii)(c)(1)-(2).  In addition, the Regulation states:

(3) "For purposes of determining that a communication is not advocating for or against a candidate or ballot proposal, the following factors shall be considered, but shall not be limited to:

    (i)    Whether it is part of an ongoing series by the group on the same issue and does not refer to a candidate or ballot proposal; and

    (ii)    Whether its timing and the identification of the candidate or ballot proposal are related to a non-electoral event (e.g. a vote on legislation or a position on legislation by an officeholder who is also a candidate) and is not made on or after January 1st of the year of

6

the election in which such candidate is seeking office or such proposal shall appear on the ballot.

*Id.* § 6200.10 (b)(1)(ii)(c)(3).  Finally, "even if some of the above factors in item (2) or (3) . . . are found, the communication must still be considered in its context before arriving at any conclusion."  *Id.* § 6200.10 (b)(1)(ii)(c)(4).

A communicating party that makes an "independent expenditure" and "does not coordinate with a candidate, candidate's authorized committees or an agent of the candidate" is an "independent expenditure committee."  N.Y. Elec. L. § 14-100(15).  The independent expenditure committee must, *inter alia*, "register with the [BOE]" and provide "the name and employer of any individual who exerts operational or managerial influence or control over the entity, as well as any salaried employee of the entity" and identify if any of those individuals are "members of a candidate's immediate family."  *Id.* § 14-107(3).  Further, after registering with the BOE, the independent expenditure committee must disclose to the BOE on a weekly basis "any contribution to such committee of one thousand dollars or more, any expenditures, except paid internet and digital advertisements, made by such committee over five thousand dollars, and any independent expenditure in the form of a paid internet or digital advertisement over five hundred dollars."  *Id.* § 14-107(4)(a)(i).  During the thirty days leading up to an election, the committee must also disclose any contributions of "one thousand dollars or more" and any "expenditure . . . over five thousand dollars" within twenty-four hours.  *Id.* § 14-107(4)(a)(ii).  These disclosures shall include the "name, address, occupation and employer of the person making the statement" and other details about the expenditure itself.  *Id.* § 14-107(4)(b).  In addition to these disclosure requirements, the statute imposes a disclaimer requirement on independent expenditures: they "shall . . . clearly state the name of the person who paid for, or otherwise published or distributed the communication and state, with respect to communications

regarding candidates, that the communication was not expressly authorized or requested by any candidate." *Id.* § 14-107(2).  Potential violations of Section 14-107 are investigated by the Chief Enforcement Counsel of the BOE's Division of Election Law Enforcement.  *Id*. §§ 3-104(2), (5).

### C.  The Instant Action

On October 2, 2025, Plaintiff filed its Amended Complaint seeking a declaratory judgment that "[New York Election Law] [Section]14-107[(1)](a), as interpreted by [title] 9 [NYCRR] [Section] 6200.10(b)(1)(ii)(c), is unconstitutionally vague and overbroad on its face and as applied to AFF's Proposed Advertisements."  AC Prayer for Relief.[5]  On October 3, 2025, Plaintiff filed a motion for a preliminary injunction (the "PI Motion") seeking to "enjoin[] Defendants—who are New York State and City regulators—from enforcing New York's disclaimer and disclosure requirements under [New York Election Law Sections] 14-100, 14-106, 14-107, *et seq* and [title] 9 [NYCRR] [Section] 6200.10 against Plaintiff for running the specific proposed advertisements listed in the Amended Complaint," ECF No. 8, along with an accompanying memorandum of law ("Pl. Br.").  Plaintiff filed its PI Motion barely a month before the New York City General election and three weeks shy of early voting.  *See* PI Hearing. Tr. at 10:17-25; 11:1-7 (responding to questions about delay that it "was not strategic," that Plaintiff "came to [counsel] not expecting litigation" but that counsel recommended a "pre-enforcement lawsuit").  Given that "the speech at issue is time-sensitive," Plaintiff sought expedited briefing on the motion.  ECF No. 10.  Defendants (i) the BOE; (ii) the BOE's Chief Enforcement Counsel; (iii) the Governor of the State of New York; and (iv) the Attorney General of the State of New York (collectively, the "State Defendants") proposed an alternative schedule on consent, ECF No. 11, which the Court granted.  ECF No. 12.  Pursuant to that schedule, the

---

[5] Plaintiff filed its original Complaint on October 1, 2025.  ECF No 1.

State Defendants filed a memorandum of law in opposition to Plaintiff's motion on October 13, 2025, ECF No. 17 (Opp.), and Plaintiff replied in further support of its motion on October 15, 2025, ECF No. 21 (Reply).[6]  The Court heard argument on the PI Motion on October 16, 2025.[7] *See generally* PI Hearing Tr.  The Court also convened a conference on October 23, 2025 to further explore the parties' positions.  *See generally* Oct. 23, 2025 Tr.  Later that day, Plaintiff and Defendants BOE and BOE's Chief Enforcement Counsel  confirmed that the parties had "reach[ed] an agreement to narrow Plaintiff's pending motion for a preliminary injunction," and Plaintiff withdrew the PI Motion as to Proposed Advertisements 1, 3, 4, 6, 10, and 11.  ECF No. 31.  Accordingly, the PI Motion now exclusively addresses Proposed Advertisements 2, 5, 7, 8 and 9.  *See id.*

## II.    LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Generally, a party seeking a preliminary injunction must "establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor,

---

[6] On October 10, 2025, Plaintiff voluntarily dismissed Defendant New York City Campaign Finance Board ("CFB").  ECF No. 15.  CFB had confirmed to Plaintiff that the Proposed Advertisements, "as provided, would not be subject to the CFB's disclosure and disclaimer requirements."  ECF No. 19-1.  The State Defendants clarified in their Opposition that "[t]he BOE interprets and applies New York State election law independently of federal and local governmental bodies' implementation of their respective election laws and regulations," and "City CFB's rules, and interpretation thereof, are irrelevant here."  Opp. at 3 n.2.

[7] Neither party requested an evidentiary hearing.  *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998), *aff'd* 828 F. App'x. 74 (2d Cir. 2020) ("A party may, of course, waive its right to an evidentiary hearing . . . .").  In any event, "[a]n evidentiary hearing [wa]s 'not required' because 'the relevant facts . . . are not in dispute.'"  *Team Rubicon Glob., Ltd. v. Team Rubicon Inc.*, No. 20 Civ. 2537, 2020 WL 2539117, at *1 (S.D.N.Y. May 19, 2020) (citing *Charette*, 159 F.3d at 755) (granting defendant's motion for a preliminary injunction and denying plaintiff's cross-motion for a preliminary injunction).

and that an injunction is in the public interest." *Citizens United v. Schneiderman*, 115 F. Supp.

3d 457, 462 (S.D.N.Y. 2015) ("*Schneiderman*") (quoting *N.Y. Progress & Prot. PAC v. Walsh*,

733 F.3d 483, 486 (2d Cir.2013)) (alterations omitted). When the injunction is "mandatory" or

"will provide the movant with substantially all the relief sought and that relief cannot be undone

even if the defendant prevails at a trial on the merits," the movant must "show a clear or

substantial likelihood of success on the merits" and "make a strong showing of irreparable

harm." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)

("*Actavis*") (internal citations omitted). When determining whether to apply this heightened

standard, courts "look to whether 'the effect of the order, once complied with, can be undone.'"

*JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (alterations omitted) (quoting *Tom

Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34-35 (2d Cir. 1995)). Here, an injunction

would allow Plaintiff to run the Proposed Advertisements immediately without complying with

the Statute's disclaimer or disclosure requirements. Plaintiff "does not explain, nor can we

divine, how a court could undo" that injunction after the election had passed, *JTH Tax, LLC*, 62

F. 4th at 667, "even if the defendant[s] prevail[ed] at a trial on the merits," *Actavis*, 787 F.3d at

650. Thus, Plaintiff "must show a 'clear' or 'substantial' likelihood of success on the merits."

*Id.*

## III. DISCUSSION

### A. Likelihood of Success on the Merits

"Consideration of the merits is virtually indispensable in the First Amendment context,

where the likelihood of success on the merits is the dominant, if not the dispositive, factor." *N.Y.

Progress & Prot. PAC*, 733 F.3d at 488. In Count I of the Amended Complaint, Plaintiff alleges

that, while "[t]he Statute uses the term 'clearly identified candidate,' . . . the Regulation expands

the settled definition of that phrase as enunciated in *Buckley v. Valeo*, [424 U.S. 1, 44 (1976),] with a vague non-exhaustive list of 'factors' to be considered." AC ¶ 69.  As a result, according to Plaintiff, "it is utterly unclear whether the [S]tatute, as interpreted by the Regulation, applies to the Proposed Advertisements." *Id.* ¶ 74.[8]  In Count II of the Amended Complaint, Plaintiff avers that "the Statute, as interpreted by the Regulation," is unconstitutionally overbroad "as applied to [Plaintiff's] Proposed Advertisements" because requiring disclaimers and disclosure for "issue advocacy that does not clearly refer to any particular candidate does not further any substantial government interest." *Id.* ¶ 90.

As detailed below, Plaintiff has not shown a substantial likelihood of success on the merits of these as-applied challenges.

### i.    Vagueness

### 1.    Standard of Review

"A statute is unconstitutionally vague in violation of the Due Process Clause if it (1) 'fails to provide a person of ordinary intelligence fair notice of what is prohibited,' or (2) 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Brokamp v. James*, 66 F.4th 374, 403 (2d Cir. 2023) (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010)).  "[W]hen a statute interferes with the right of free speech or free association, a more stringent vagueness test should apply." *Holder*, 561 U.S. at 19 (internal

---

[8] Plaintiff also alleges, in Count I, that "[t]he Regulation is unconstitutionally vague on its face because it does not provide fair notice or any intelligible principle of what constitutes a reference to a 'clearly identified candidate.'" AC ¶ 70.  At oral argument, however, counsel clarified that Plaintiff is only making a "a narrow request for a preliminary injunction, related to . . . particular ads."  PI Hr'g. Tr. at 7:25-8:2; *see also* October 23, 2025 Hr'g Tr. at 6:7-18 (discussing the "as-applied problem" with respect to the Proposed Advertisements).  Thus, for purposes of the PI Motion, the Court considers whether Plaintiff has established a substantial likelihood of success on the merits of its argument that "[t]he Regulation is . . . unconstitutionally vague as applied" only to those "ads."  AC ¶ 74.

quotation marks omitted).  But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Id.* (internal quotation marks omitted).

As previously explained, Plaintiff brings "a narrow request for a preliminary injunction, related to . . . particular ads."  PI Hearing Tr. at 7:25-8:2.  "[A] prospective as-applied challenge seeks to prove that a statute cannot constitutionally be applied to a specific course of conduct that the challenger intends to follow."[9]  *Copeland v. Vance*, 893 F.3d 101, 112 (2d Cir. 2018).  "[I]n the context of an as-applied vagueness challenge, a court's analysis should be confined to the litigant's *actual* conduct, and a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute."  *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010).

### 2.  The Statutory Scheme

By the plain text of the Statute, an independent expenditure must identify or refer to a "clearly identified candidate."[10]  N.Y. Elec. L. § 14-107(1)(a).  The Statute's definition of "clearly identified candidate" comports with the Supreme Court's limiting construction of "clearly identified" in *Buckley v. Valeo*, 424 U.S. 1, 44 (1976).  In *Buckley*, "the Court considered a challenge to numerous provisions of the Federal Election Campaign Act ('FECA'), including its contribution limits, expenditure limits, and disclosure provisions."  *Citizens Union of N. Y. v. Attorney General of N.Y.*, 408 F. Supp. 3d 478, 498 (S.D.N.Y. 2019).  As relevant here, the Court "construed [FECA's] disclosure provision 'to reach only funds used for

---

[9] "A facial vagueness challenge," in contrast, "will succeed only when the challenged law can never be validly applied."  *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 131 (2d Cir. 2014) ("*VRLC II*") (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 (1982)).

[10] In the case of New York Election Law Section 14-107(1)(a)(ii), an independent expenditure must refer to a clearly identified candidate "*or ballot proposal*."  N.Y. Elec. L. § 14-107(1)(a)(ii) (emphasis added).  Language concerning "ballot proposal[s]" is not at issue in this motion.

communications that expressly advocate the election or defeat of a clearly identified candidate.'" *Id.* (quoting *Buckley*, 424 U.S. at 80). FECA "define[d] 'clearly identified' to require that the candidate's name, photograph, or drawing, or other unambiguous reference to his identity appear as part of the communication." *Buckley*, 424 U.S. at 43 n.51. The Supreme Court interpreted the phrase "unambiguous reference" to "include use of the candidate's initials (e.g., FDR), the candidate's nickname (e.g., Ike), his office (e.g., the President or the Governor of Iowa), or his status as a candidate (e.g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia)." *Buckley*, 424 U.S. at 43 n.51.

Here, consistent with *Buckley*, the Statute provides that "'clearly identified candidate' means that (a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference." N.Y. Elec. L. § 14-100(12). As Plaintiff acknowledged at argument, "[i]f the New York law is using the established definition of 'clearly identified candidate,' the *Buckley* definition, then . . . it would be upholdable under *Citizens United* [*v. Fed. Election Comm'n*, 558 U.S. 310 (2010)], under *Buckley*, [and] under [*VRLC II*]." PI Hearing Tr. 12:1-4.

Although the Statute's definition of "independent expenditure" varies depending on proximity to the election or the presence or absence of certain words, the analysis in each instance begins—and, in some instances, ends—with whether a candidate is "clearly identified." *See generally* N.Y. Elec. L. § 14-107(1)(a). Specifically, a communication that "contains words such as 'vote,' 'oppose,' 'support,' 'elect,' 'defeat,' or 'reject,' which call for the election or defeat of the *clearly identified candidate*" is subject to disclaimer and disclosure requirements

"irrespective of when such communication is made."[11] *Id.* § 14-107(1)(a)(i) (emphasis added).

Beginning on "January first of the year of the election," a communication that "refers to . . . a

*clearly identified candidate*" is subject to the statutory requirements if the communication

"advocates for or against" that candidate, *even if* the communication *does not* contain the specific

words listed in subsection (i). *Id.* § 14-107(1)(a)(ii) (emphasis added). Finally, "within sixty

days" of a general election, any communication that merely "includes or references *a clearly

identified candidate*," *id.* § 17-107(1)(a)(iii) (emphasis added), is subject to the Statute's

disclaimer and disclosure requirements, regardless of whether the communication contains

"magic words," *McConnell*, 540 U.S. at 126, or "advocates for or against" the "clearly identified

candidate." N.Y. Elec. L. § 14-107(1)(a)(ii).

 Plaintiff argues that the Regulation "infuses ambiguous, overly broad terms into the

[Statute's] definition of 'clearly identified candidate.'" Pl. Br. at 17. But the Regulation

expressly interprets the statutory phrase "Advocates for or Against" a candidate and only that

phrase. 9 NYCRR § 6200.10(b)(1)(ii)(c)(1). "[A]dvocates for or against" appears only once in

the Statute—in subsection (ii) of the definition of "independent expenditure." N.Y. Elec. L.

§ 14-107(1)(a)(ii). The phrase "clearly identified candidate" does not even appear in the

Regulation's list of factors.[12] *See* 9 NYCRR § 6200.10(b)(1)(ii)(c)(2). That list of factors,

---

[11] These words fall within the class of "magic words" that "marked a bright statutory line
separating 'express advocacy' from 'issue advocacy'" following the Supreme Court's "strict
reading" of FECA in *Buckley*. *McConnell v. Fed. Elec. Com'n*, 540 U.S. 93, 126 (2003).

[12] Plaintiff refers throughout its opening brief to "the Regulation's vague and open-ended
definition of '*advocating for or against* a *clearly identified candidate*.'" Pl. Br. at 16 (citing 9
NYCRR § 6200.10(b)(1)(ii)(c)) (emphasis added); *see also id.* at 21 (discussing "[t]he
Regulation's novel and expansive definition of '*advocating for or against a clearly identified
candidate*'" (emphasis added)); *id.* at 22 (again discussing "the definition of '*advocating for or
against a clearly identified candidate*'" (emphasis added)). That phrase does not appear in the
Regulation, however.

provided "[f]or purposes of determining that a communication is *advocating for or against* a candidate," 9 NYCRR § 6200.10(b)(1)(ii)(c)(2) (emphasis added), thus "cannot reasonably be understood—or misunderstood—to" displace the Statute's definition of "clearly identified candidate." *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021) (considering the "plain meaning" of the statutory language, "particularly when viewed in context," in rejecting vagueness and First Amendment challenges); *see also* Opp. at 15-16 (disputing any relevance of the "regulatory factors in § 6200.10(b)(1)(ii)" to "whether the communication clearly identifies a candidate in the first place.").

### 3. Application

In analyzing Plaintiff's as-applied vagueness challenge, the Court considers application of the Statute to Plaintiff's "actual conduct." *Berlin*, 593 F.3d at 189. Plaintiff argues that, even "within sixty days" of an election, N.Y. Elec. L. § 14-107(1)(a)(iii), a party must still "abide by [and therefore interpret] the provision for advocating for or against" a candidate. October 23, 2025 Tr. at 3:20-23. As set forth above, however, the "advocates for or against" language in the definition of "independent expenditure," N.Y. Elec. L. § 14-107(1)(a)(ii), "has no force in this context," *VRLC II*, 758 F.3d at 131 (rejecting vagueness challenge to "expenditure" definition), where the Proposed Advertisements would run "within sixty days" of New York City's upcoming election and therefore would be analyzed under Section 14-107(1)(a)(iii). *See* AC ¶ 5 ("AFF would like to speak to New Yorkers on these important issues in the coming weeks . . . and urge all New Yorkers . . . to exercise their right to vote."); *see also* PI Hearing Tr. 15:5-6 ("[T]he election is kind of what brings the discussion to the forefront of the conversation."). Within this sixty-day period, if BOE's Chief Enforcement Counsel concludes under subsection (iii) that an advertisement "includes or references a clearly identified candidate" (or, for that

matter, that it does not do so), the inquiry stops there.  The question of whether the advertisement "advocates for or against" a clearly identified candidate would not be reached.

In "contending that the [Regulation] is . . . vague[]," Plaintiff "focuses not on the [Regulation's] text, but rather on perceived deficiencies in the ways that [the State Defendants] enforce the [Regulation]" by purportedly applying its list of factors to the Statute's definition of "clearly identified candidate."  *Union Square Supply Inc. v. De Blasio*, 572 F. Supp. 3d 15, 23 (S.D.N.Y. 2021) (denying vagueness challenge alleging that "City employees" applied the wrong benchmarks in enforcing the "Price Gouging Rule").  Plaintiff's concern seems to be that "the State [Defendants] [themselves] rel[y] on th[e] factor[s] to argue that 'Plaintiff's ads unambiguously refer to candidate Mamdani.'"  Reply at 7 (quoting Opp. at 20); *see* AC ¶ 75 (averring that "the Proposed Advertisement ***should not*** be covered by the Statute"); Reply at 5 ("But when the State applies the Regulation, to [the] Proposed Advertisements, it becomes clear that the Regulation is as broad as [Plaintiff] claims."); *id.* at 8 ("Yet, when applying the Regulation to the Proposed Advertisements, the State relies on a subjective, intent based inquiry.").  "This is not an argument that the [Statute, as interpreted by the Regulation] is unconstitutionally vague."  *Union Square Supply Inc.*, 572 F. Supp. 3d at 23.  "It is instead an argument that the [State Defendants] [are] not following the [Statute's or the Regulation's] plain text."[13]  *Id.*

---

[13] If the BOE Chief Enforcement Counsel made a determination that Plaintiff believed was "'in violation of lawful procedure, . . . affected by an error of law or was arbitrary and capricious or an abuse of discretion[,]' and [Plaintiff wished to seek] nullification of such action, a [New York Civil Practice Law and Rules] Article 78 proceeding [would be] the appropriate vehicle to address the claim."  *Fitzgerald v. Thompson*, No. 07 Civ. 6851 (BSJ), 2009 WL 29599, at *8 (S.D.N.Y. Jan. 5, 2009), *aff'd*, 353 F. App'x 532 (2d Cir. 2009) (quoting *Abiele Contracting, Inc. v. N.Y. City Sch. Constr. Auth.*, 91 N.Y.2d (1997)).  *See, e.g.*, *Union Square.*, 572 F. Supp. 3d at 23 ("To the extent that Union Square Supply wishes to object to [an agency] decision on the

For the foregoing reasons, Plaintiff's theory that "it is utterly unclear whether the [S]tatute, as interpreted by the Regulation, applies to the Proposed Advertisements" is unlikely to succeed on the merits. *Cf. VRLC II*, 758 F.3d at 131 (concluding that, because "the 'influencing' language in [the 'expenditure'] definition has no relevance . . . [the court] reject[s] VRLC's vagueness challenge to the term 'expenditure' as it is used in the mass media activity statute.").

### ii.    First Amendment

"Disclaimer and disclosure requirements" are subject to "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Citizens United*, 558 U.S. at 366-367 (quoting *Buckley*, 424 U.S. at 64) (upholding disclosure requirements in federal law as applied to plaintiff's speech). "In *Buckley*, the [Supreme] Court explained that disclosure [requirements] could be justified based on a governmental interest in 'providing the electorate with information' about the sources of election-related spending." *Id.* The Statute's requirements are "justified" here. *Id.*

As an initial matter, the Statute "is explicitly limited in time and scope" to advance the public's "interest in knowing who is speaking about a candidate shortly before an election." *VRLC II*, 758 F. 3d at 133-134 (quoting *Citizens United,* 558 U.S. at 369) (rejecting First Amendment challenge to disclosure requirements under Vermont's election statute). As previously noted, the Statute only applies to communications that (i) "call for the election or defeat of the *clearly identified candidate*," (ii) "advocate[] for or against a *clearly identified*

---

grounds that City inspectors and [the agency] hearing officers are disregarding the Rule's requirements, the correct procedural mechanism to do so was an Article 78 proceeding in state court); *League of Women Voters of N.Y.  v. N.Y. State Board of Elections*, 206 A.D. 3d 1227 (N.Y. App. Div. 2022) (Article 78 challenge to BOE's certification of state assembly ballots for primary election); *Brennan Ctr. for Justice at N.Y. Univ. Sch. of L. v. N.Y. State Board of Elections*, 159 A.D.3d 1299 (N.Y. App. Div. 2018) (Article 78 challenge to BOE's determination that limited liability companies are not subject to Election Law campaign contribution limits imposed upon corporations and partnerships).

*candidate*," or (iii) "include[] or reference[] a *clearly identified candidate*."  NY. Elec. L. § 14-107(1)(a) (emphasis added).  In other words, "[a] communication only qualifies as an [independent expenditure] if it includes the name or likeness of a *clearly identified candidate*."[14] *VRLC II*, 758 F.3d at 131 (interpreting the analogous definition of "mass media activity" under Vermont state law).  Because the Statute does not reach "issue ads that do not reference a 'clearly identified candidate,'" Pl. Br. at 28, it is "within the scope of regulation permitted under *Citizens United*."  *VRLC II*, 758 F.3d at 133.  "[A]lthough the [definition of "independent expenditure"] is not explicitly time limited," *id.* at 133, an individual can only be a "candidate" under the Statute once he or she has "taken the necessary action to qualify himself [or herself] for nomination . . . or election" or "received contributions or made expenditures . . . with a view to bringing about his [or her] nomination for election or election."  N.Y. Elec. L. § 14-100(7) (defining "candidate").  "Thus, the statute will only apply during a campaign for public office." *VRCL II*, 758 F.3d at 133 (concluding that a similar definition of "candidate" under Vermont state law limited the scope of Vermont's disclosure law).

In service of New York's interest in "providing the electorate with information about the sources of election-related spending," *id.* at 133 (citing *Citizens United*, 558 U.S. at 367), the Statute requires independent expenditures to "state the name of the person who paid for, or otherwise published or distributed the communication."  N.Y. Elec. L. § 14-107(2).  In addition,

---

[14] The Vermont statute at issue in *VRLC II* used the same definition of "clearly identified [candidate]" as New York Election Law Section 14-100(12).  *Compare* Vt. Stat. Ann. tit. 17, § 2901(3)("'Clearly identified,' with respect to a candidate, means: (A) the name of the candidate appears; (B) a photograph or drawing of the candidate appears; or (C) the identity of the candidate is apparent by unambiguous reference.") *with* N.Y. Elec. L. § 14-100(12) ("'clearly identified candidate' means that: (a) the name of the candidate involved appears; (b) a photograph or drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous reference.").

the Statute obligates an independent expenditure committee to, *inter alia*, "register with the [BOE]" and to file weekly disclosures of any "contribution to such committee of one thousand dollars or more" of any non-internet and digital advertisement expenditures of "over five thousand dollars or more," and of any internet and digital expenditures "over five hundred dollars." *Id.* § 14-107(3), (4). As the State Defendants explained, these requirements "provide[] New Yorkers with information on those who advocate for or against candidates for elected office," "deter corruption," and "allow the BOE to gather data necessary to detect violations of New York's campaign finance laws, such as the bar on independent expenditures by foreign nationals." Opp. at 23-24. "Th[ese] public benefit[s] [are] in line with the informational interest approved by *Citizens United.*" *VRLC II*, 758 F.3d at 134. Finally, in the thirty days prior to an election, the independent expenditure committee must disclose within twenty-four hours any contributions of "one thousand dollars or more" and "any expenditures … over five thousand dollars." N.Y. Elec. L. § 14-107(4). "The requirement that such reports be filed within twenty-four hours of the communication is also directly related to the State's informational interest given the need to rapidly address election-related speech in the final weeks of a campaign." *VRLC II*, 758 F.3d at 134.

Because the relevant provisions of the Statute fall "within the scope of regulation permitted under *Citizens United*" and are "directly related to the State's informational interest," the Statute as applied "survives exacting scrutiny." *VRLC II*, 758 F.3d at 134 (affirming that the Vermont statute governing electioneering communications and mass media activities did not violate First Amendment); *see also Citizens United*, 558 U.S. at 371 ("[W]e find the statute valid as applied to the ads."). Accordingly, Plaintiff "has not shown a clear likelihood of success on

the merits" of its First Amendment challenge. *Geller v. Cuomo*, 476 F. Supp. 3d 1, 18 (S.D.N.Y. 2020) (denying preliminary injunction raising First Amendment political speech concerns).

### B. Irreparable Harm

"The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant." *Costello v. McEnery*, 767 F. Supp. 72, 76 (S.D.N.Y. 1991) (denying preliminary injunction in First Amendment challenge based on lack of irreparable harm), *aff'd*, 948 F.2d 1278 (2d Cir. 1991). Plaintiff's only argument as to irreparable harm is the "chilling [of Plaintiff's] political speech," Pl. Br. at 32, and the "alleged constitutional violations," PI Hearing Tr. at 10:3-8. As set forth below, Plaintiff is not entitled to a presumption of irreparable harm and has failed to make any further showing of irreparable harm.

Plaintiff is not entitled to a presumption of irreparable harm for two reasons. First, even if "pleading an alleged constitutional violation itself constitutes irreparable harm," "the presumption of irreparable harm afforded [to] constitutional claims [is] impacted by the outcome of the Court's analysis of the likelihood of success on the merits element." *Students for Fair Admissions v. United States Mil. Acad. at W. Point*, 709 F. Supp. 3d 118, 136 (S.D.N.Y. 2024) (citations omitted) (denying preliminary injunction on constitutional claims where "it [was] unclear whether Plaintiff [wa]s likely to succeed on the merits"), *appeal withdrawn*, No. 24-40, 2024 WL 1494896 (2d Cir. Feb. 13, 2024); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) ("Although Plaintiffs are subject to meaningful burdens on their religious practice if they choose to obtain the COVID-19 vaccine, because they have failed to demonstrate a likelihood of success on their First Amendment or other constitutional claims, their asserted harm is not of a constitutional dimension."), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *Brock v. City of New York*, No. 21 Civ. 11094 (ATS) (DA), 2022 WL 479256, at *4

(S.D.N.Y. Jan. 28, 2022) ("The favorable presumption of irreparable harm arises only after a plaintiff has shown a likelihood of success on the merits of the constitutional claim.").  As explained above, Plaintiff "ha[s] not shown a likelihood that the [Statute or the Regulation]" as applied "injures [its] First Amendment rights" or "violates due process."  *Schneiderman*, 115 F. Supp. 3d at 473.  Thus, Plaintiff is "not likely to suffer irreparable harm."  *Id.*; *see also Am. Postal Workers Union, AFL-CIO v. United States Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985) (reversing grant of a preliminary injunction and holding that, "even if appellees' first amendment rights [we]re implicated . . . appellees [did] not demonstrate[] that [the conduct at issue] would have [had] a chilling effect on appellees' exercise of their first amendment rights, sufficient to constitute irreparable harm.").

Second, while "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), that "presumption . . . only applies when the challenged restriction 'directly limits speech.'" *Schneiderman*, 115 F. Supp. 3d at 473 (quoting *Bronx Household of Faith v. Board of Educ. of the City of New York*, 331 F.3d 342, 349 (2d Cir. 2003)).  The Statute and the Regulation "function[] as a disclosure requirement, not [as] a direct limitation on speech."  *Id*. (citing *Citizens United*, 558 U.S. at 366; *N.Y. Progress & Prot. PAC*, 733 F.3d at 486-87).  Thus, Plaintiff "must 'articulate a specific present objective harm or a threat of specific future harm'" to establish irreparable harm.  *Id*. (quoting *Bronx Household*, 331 F.3d at 350).

Plaintiff's irreparable harm argument rests on the alleged constitutional violations.  It does not invoke any other "specific present objective harm or a threat of a specific future harm." *Schneiderman*, 115 F. Supp. 3d at 473 (denying preliminary injunction because plaintiff "ha[d] not made a clear showing that its unconstitutional burden claim [wa]s likely to succeed.").

Although Plaintiff alludes to other irreparable harm, such as "physical and professional reprisals, including threats[] [and] harassment, . . . as well as economic retaliation" against its donors, AC ¶ 93, Plaintiff "has offered no evidence" that its donors "would face [these] threats, harassment, or reprisals if their names were disclosed." *Citizens United*, 558 U.S. at 370 (citing *McConell*, 540 U.S. at 198); *see also McConnell*, 540 U.S. at 103-04 ("[T]he evidence here did not establish the requisite reasonable probability of harm to any plaintiff group or its members resulting from compelled disclosure."). This factor weighs in favor of denying the request for a preliminary injunction.

### C. Balance of Equities and Public Interest

"When the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge." *We The Patriots*, 17 F. 4th at 295 (affirming denial of preliminary injunction). With respect to both factors, Plaintiff argues that an injunction would "ensure[] protection of constitutional rights, prevent[] enforcement of laws that may harm the public, and ensure[] the government compl[ies] with legal standards." Pl. Br. at 33. As the Court has already determined, however, Plaintiff is not likely to succeed on the merits of its as-applied challenge.

The State Defendants, for their part, identify two risks of enjoining the disclaimer and disclosure requirements close in time to the election. First, in the event of a determination that the Statute applied to the Proposed Advertisements, an injunction would "prevent New York City voters from receiving th[e] important informational benefit," Opp. at 30, of "knowing who [wa]s speaking about a candidate shortly before an election," *Citizens United*, 558 U.S. at 369. While "[t]he First Amendment protects political speech," disclosure permits citizens "to react to the speech . . . in a proper way." *Citizens United*, 558 U.S. at 371. "This transparency enables

the electorate to make informed decisions and give proper weight to different speakers and messages." *Id.* Second, the State Defendants argue that, "[e]ven if the Court only enjoins the challenged disclosure requirements as to Plaintiff, such an injunction risks creating confusion and uncertainty as to the application of" the Statute, in general. Opp. at 31. As a result, other organizations "that would otherwise be required to report independent expenditures within the statutory definition may decline to do so," resulting in more widespread deprivations of information for the general public. *Id.* New York City voters' "informational interest alone is sufficient to justify application of [the Statute] to these ads," *Citizens United*, 558 U.S. at 369, to the extent that BOE's Chief Enforcement Counsel determines that the Proposed Advertisements "include[] or reference[] a clearly identified candidate," N.Y. Elec. L. § 14-107(1)(a)(iii). Accordingly, "the balance of equities" on this motion "weighs heavily in favor of the [State Defendants]" and "the public interest is served by [the] continued enforcement of" the Statute and the Regulation. *Schneiderman*, 115 F. Supp. 3d at 474.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's request for a preliminary injunction is DENIED.

SO ORDERED.

Dated: October 28, 2025
        New York, New York

JENNIFER H. REARDEN
United States District Judge