**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN FUTURE FUND, INC.,

                    Plaintiff,

           - against -

NEW YORK CITY CAMPAIGN FINANCE
BOARD, NEW YORK STATE BOARD OF
ELECTIONS, MICHAEL L. JOHNSON, in his
official capacity as Chief Enforcement Counsel for
the New York State Board of Elections Division of
Election Law Enforcement, KATHLEEN C.
HOCHUL, in her official capacity as Governor of the
State of New York, and LETITIA A. JAMES, in her
official capacity as Attorney General of the State of
New York,

                    Defendants.

No. 1:25-cv-08151 (JHR)

## MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

LETITIA JAMES
Attorney General
State of New York
Attorney for State Defendants
28 Liberty Street
New York, New York 10005

PATRICK A. BAKER
RODERICK L. ARZ
Assistant Attorneys General
  of Counsel

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

PROCEDURAL HISTORY.........................................................................................................5

STANDARD OF REVIEW .........................................................................................................6

ARGUMENT...........................................................................................................................7

    I.    All Claims Against the Governor and the Attorney General Should be Dismissed ............7

    II.   Plaintiff Lacks Standing to Challenge New York Election Law's Definition of "Advocates for or Against"................................................................................................9

    III.  Plaintiff's As-Applied Claims Should Be Dismissed as Moot .........................................13

    IV.  Plaintiff Fails to State a Claim for Facial Invalidation of New York's Definition of "Clearly Identified Candidate" .......................................................................................15

        A.  The Phrase "Apparent by Unambiguous Reference" is Not Facially Vague.........16

        B.  New York's Independent Expenditure Requirements Are Not Facially Overbroad ................................................................................................................19

CONCLUSION.......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
    761 F.3d 252 (2d Cir. 2014)..................................................................................................18

*Altman v. Bedford Cent. Sch. Dist.*,
    245 F.3d 49 (2d Cir. 2001)...................................................................................................10

*Alvarez v. Smith*,
    558 U.S. 87 (2009)................................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................7

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973)..............................................................................................................20

*Brokamp v. James*,
    66 F.4th 374 (2d Cir. 2023) .............................................................................................10, 12

*Buckley v. Valeo*,
    424 U.S. 1 (1976)........................................................................................1, 6, 15, 17, 18, 19

*Chrysafis v. James*,
    534 F. Supp. 3d 272 (E.D.N.Y. 2021) ...................................................................................9

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
    408 F. Supp. 3d 478 (S.D.N.Y. 2019)..................................................................................19

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010)................................................................................2, 6, 15, 19, 20

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..............................................................................................................10

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008)........................................................................................................10, 12

*Farrell v. Burke*,
    449 F.3d 470 (2d Cir. 2006)..................................................................................................21

*Fed. Election Comm'n v. Cal. Democratic Party*,
    No. CIVS030547, 2004 WL 865833 (E.D. Cal. Feb. 13, 2004)............................................18

*Fed. Election Comm'n v. Wisc. Right to Life, Inc.*,
  551 U.S. 449 (2007)............................................................................................14

*Freedom Party of N.Y. v. N.Y. State Bd. of Elec.*,
  77 F.3d 660 (2d Cir. 1996)................................................................................15

*Fund Liquidation Holdings LLC v. Bank of America Corp.*,
  991 F.3d 370 (2d Cir. 2021)........................................................................10, 12

*Goldstein v. Hochul*,
  680 F. Supp. 3d 370 (S.D.N.Y. 2023)................................................................8

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)............................................................................................19

*Hedges v. Obama*,
  724 F.3d 170 (2d Cir. 2013)..............................................................................10

*Hispanic Leadership Fund, Inc. v. Fed. Election Comm'n*,
  897 F. Supp. 2d 407 (E.D. Va. 2012) ..............................................................17

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010)................................................................................................16

*Independent Party of Richmond Cnty. v. Graham*,
  413 F.3d 252 (2d Cir. 2005)..............................................................................14

*Irish Lesbian and Gay Org. v. Giuliani*,
  143 F.3d 638 (2d Cir. 1998)..............................................................................13

*Jeannot v. New York State*,
  762 F. Supp. 3d 217 (E.D.N.Y. 2025) ..............................................................8

*Keene Corp. v. United States*,
  508 U.S. 200 (1993)............................................................................................10

*Kolender v. Lawson*,
  461 U.S. 352 (1983)............................................................................................18

*Levas & Levas v. Vill. of Antioch*,
  684 F.2d 446 (7th Cir. 1982) ............................................................................18

*Lewis v. Casey*,
  518 U.S. 343 (1996)............................................................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................................9

*Martin-Trigona v. Shiff*,
    702 F.2d 380 (2d Cir. 1983)......................................................................................13

*Melendez v. City of N.Y.*,
    16 F.4th 992 (2d Cir. 2021) ......................................................................................17

*Members of City Council of L.A. v. Taxpayers for Vincent*,
    466 U.S. 789 ..............................................................................................................20

*Mendez v. Heller*,
    530 F.2d 457 (2d Cir. 1976)........................................................................................8

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)..................................................................................................19

*Morrison v. Nat'l Australia Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008)....................................................................................6, 7

*National Organization for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013)......................................................................................14

*Salman v. United States*,
    580 U.S. 39 (2016)....................................................................................................18

*Spencer v. Kemna*,
    523 U.S. 1 (1998)......................................................................................................14

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)..................................................................................................10

*Thibodeau v. Portuondo*,
    486 F.3d 61 (2d Cir. 2007)........................................................................................15

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................................9, 10

*Ulrich v. Mane*,
    383 F. Supp. 2d 405 (E.D.N.Y. 2005) ....................................................................7, 9

*United States v. Hansen*,
    599 U.S. 762 (2023)................................................................................................20, 21

*United States v. Sun & Sand Imports, Ltd., Inc.*,
    725 F.2d 184 (2d Cir. 1984)......................................................................................18

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)................................................................................................16, 19

*Virginia v. American Booksellers Ass'n*,
    484 U.S. 383 (1988)................................................................................................10, 12

*Vt. Right to Life Comm., Inc. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000)................................................................................................10

*Vt. Right to Life Comm., Inc. v. Sorrell*,
    758 F.3d 118 (2d Cir. 2014)..............................................................2, 6, 15, 16, 19, 20

*Wang v. Pataki*,
    164 F. Supp. 2d 406 (S.D.N.Y. 2001)................................................................................8

*Warden v. Pataki*,
    35 F. Supp. 2d 354 (S.D.N.Y. 1999)................................................................................7

*West Hartford v. Operation Rescue*,
    915 F.2d 92 (2d Cir. 1990)................................................................................................11

## CONSTITUTIONS

U.S. Const. Amend. I .................................................................................. passim

U.S. Const. Amend. XIV .......................................................................................19

## STATE STATUTES

N.Y. Elec. L.
    § 3-104 ....................................................................................................4, 8, 9
    § 14-100 ...............................................................................................3, 15, 16
    § 14-107 .................................................................................................. passim
    § 14-126 ....................................................................................................4, 8

## STATE REGULATIONS

9 NYCRR
    § 6200.10(b)(1)(ii)(c) ..........................................2, 4, 5, 6, 9, 11, 12, 16
    § 6200.10(b)(3) ....................................................................................3, 16

## RULES

Fed. R. Civ. P. 12 ....................................................................................1, 6, 7, 21

iv

Defendants New York State Board of Elections ("BOE"), Michael L. Johnson in his official capacity as Chief Enforcement Counsel of the BOE Division of Election Law Enforcement, Kathleen Hochul in her official capacity as Governor of the State of New York, and Letitia James in her official capacity as Attorney General of the State of New York (collectively, "State Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint dated October 2, 2025, ECF No. 4 ("Am. Compl."), with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## PRELIMINARY STATEMENT

Plaintiff American Future Fund, Inc. ("Plaintiff") brought this lawsuit one month before New York's November 2025 general election, seeking a preliminary injunction that would permit it to run a series of advertisements in advance of the election without triggering New York's disclaimer, registration, and disclosure requirements for independent expenditures. Plaintiff contends that New York's statutory definition of "clearly identified candidate"—a necessary criterion for a communication to be regulated as an independent expenditure—is unconstitutionally vague and overbroad, even though the Supreme Court upheld an identical definition in Buckley v. Valeo, 424 U.S. 1, 44 (1976).

This Court's denial of preliminary injunctive relief, which found that Plaintiff was unlikely to succeed on the merits of its as-applied claims, is all-but-dispositive of this action. See Opinion and Order dated October 28, 2025, ECF No. 35 ("PI Order"). The Court should now dismiss the Amended Complaint in its entirety. As an initial matter, Plaintiff fails to state a claim for relief against the Governor or the Attorney General, who have no role in the enforcement of the relevant provisions of New York Election Law. Plaintiff's claims also suffer from two

1

jurisdictional defects related to the timing of the litigation. First, because Plaintiff filed suit within 60 days of a general election, it lacks standing to challenge provisions of the independent expenditure statute, N.Y. Elec. L. § 14-107, and its implementing regulation that are not directly applicable during that window. See id. § 14-107(1)(a)(ii); 9 NYCRR §§ 6200.10(b)(1)(ii)(c)(1)-(4). Second, Plaintiff's as-applied claim, which was only legible in the specific context of New York City's 2025 general election, is moot now that the election is over.

Finally, rather than adopt Plaintiff's strained and constitutionally problematic interpretation of New York's independent expenditure statute, the Court should dismiss Plaintiff's facial vagueness and First Amendment challenges for failure to state a claim. New York's definition of "clearly identified candidate," which requires at minimum that the candidate be "apparent by unambiguous reference," is not vague on its face because its meaning is readily ascertainable. And because the independent expenditure statute does not, on its face, reach pure issue advocacy, its disclaimer, registration, and disclosure requirements are "within the scope of regulation permitted under [Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010)]." Vt. Right to Life Comm., Inc. v. Sorrell, 758 F.3d 118, 133 (2d Cir. 2014) ("VRLC II").

## BACKGROUND

The structure of New York State's statutory and regulatory regime governing independent expenditures is set forth fully in State Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction dated October 13, 2025 ("PI Opp."), ECF No. 17, at 3-6. In brief, and as relevant here, New York Election Law defines three categories of communications as "independent expenditures" that trigger disclosure and reporting requirements. N.Y. Elec. L. § 14-107(1)(a). While the criteria vary based on the timing of the communication, each category specifies that an independent expenditure must, at a

2

minimum, refer to a "clearly identified candidate" for office in a future election.[1] Id. A candidate

is "clearly identified" where "(a) the name of the candidate involved appears; (b) a photograph or

drawing of the candidate appears; or (c) the identity of the candidate is apparent by unambiguous

reference." Id. § 14-100(12).

Whether a communication can be considered an independent expenditure depends in part

on its proximity to the date of an election. First, a communication that falls outside the year a

candidate is seeking office is an independent expenditure only if it explicitly "call[s] for the

election or defeat of the clearly identified candidate" using "words such as 'vote,' 'oppose,'

'support,' 'elect,' 'defeat,' or 'reject'." Id. § 14-107(1)(a)(i). Second, if the communication

occurs during an election year, but outside the periods immediately preceding the primary and

general election dates, it need not include words of express advocacy to be an independent

expenditure, but it must still both "refer[] to and advocate[] for or against a clearly identified

candidate" in the election. Id. § 14-107(1)(a)(ii). Third, when a communication is made close in

time to an election—within 60 days before a general election or 30 days before a primary

election—a reference to a clearly identified candidate in that election suffices to bring the

communication within the ambit of the independent expenditure statute, even if it does not

engage in express or functional advocacy. Id. § 14-107(1)(a)(iii).

The BOE has promulgated regulatory language to interpret and apply New York's

independent expenditure statute. 9 NYCRR § 6200.10 (the "Regulation"). The Regulation

contains a definition of "clearly identified candidate" that is identical to the statutory definition.

Id. § 6200.10(b)(3) ("Clearly identified candidate means that: (i) the name of the candidate

---

[1] Certain communications that concern ballot proposals, which are not at issue in this litigation, are also deemed independent expenditures. See id. § 14-107(1)(a)(ii).

involved appears; (ii) a photograph or drawing of the candidate appears; or (iii) the identity of the candidate is apparent by unambiguous reference."). In addition, the Regulation further defines the phrase "Advocates for or Against," which only appears in the second statutory category of independent expenditures (those that are made during an election year but outside the period of time before an election): "For purposes of this regulation Advocates for or Against means—in the absence of explicit words of advocacy for or against a candidate . . .—that the expenditure, through the use of images, photos, or language, promotes, supports, attacks, or opposes the Clearly Identified Candidate." Id. § 6200.10(b)(1)(ii)(c)(1). The Regulation includes a non-exhaustive list of factors to aid in determining whether a communication that does not include "explicit words of advocacy" is nonetheless "advocating for or against a candidate." Id. §§ 6200.10(b)(1)(ii)(c)(2)-(3).

Independent expenditures must include language identifying "the name of the person who paid for, or otherwise published or distributed the communication" and disclaiming coordination with any candidate. See N.Y. Elec. L. § 14-107(2). An organization that makes independent expenditures must register with the BOE, id. § 14-107(3), and must disclose independent expenditures above a monetary threshold, id. § 14-107(4). The BOE's Chief Enforcement Counsel is authorized to investigate violations of § 14-107. Id. § 3-104(3). Violations of the statute's identification, registration, and disclosure requirements are subject to civil penalties, which may be sought by the Chief Enforcement Counsel through a special proceeding or civil action in state court. See id. § 3-104(5)(a); id. § 14-126(3) (penalizing false identification of or knowing failure to identify an independent expenditure pursuant to § 14-107(2)); id. § 14-107(8)(b) (penalizing knowing and willful violation of the registration and disclosure requirements).

## PROCEDURAL HISTORY

Plaintiff, a 501(c)(4) non-profit organization "designed to effectively communicate conservative and free market ideals," filed the operative Amended Complaint on October 2, 2025. Am. Compl. ¶ 25. Plaintiff alleges that New York's definition of "independent expenditure," N.Y. Elec. L. § 14-107(1)(a), as interpreted by the Regulation, is unconstitutionally vague, Am. Compl. ¶¶ 65-81, and violates the First Amendment rights to freedom of speech and association, id. ¶¶ 83-96. The Amended Complaint asks this Court to declare § 14-107(1)(a), "as interpreted by 9 [NYCRR] § 6300.10(b)(1)(ii)(c)," facially unconstitutional, and to enjoin its application to a series of eleven proposed advertisements that Plaintiff intended to air in New York City before the November 4, 2025 general election. Id. ¶ Prayer for Relief.

On October 3, 2025, Plaintiff moved for a preliminary injunction on its as-applied claims ("PI Motion"). See ECF No. 8; see also ECF No. 9 (Plaintiff's memorandum of law); ECF No. 17 (State Defendants' opposition); ECF No. 21 (Plaintiff's reply). Following oral argument on October 16, 2025, Plaintiff and Defendants BOE and the Chief Enforcement Counsel reached an agreement that six of the proposed advertisements would not constitute independent expenditures under § 14-107(1)(a)(iii),[2] thereby narrowing the PI Motion to the remaining five advertisements. See ECF No. 31.

The Court denied the PI Motion on October 28, 2025.[3] See PI Order. In relevant part, the Court found that Plaintiff had not shown a substantial likelihood of success on the merits of its

---

[2] Plaintiff has not yet submitted copies of these six advertisements, as aired, to the Court or to State Defendants' counsel. See ECF No. 31 at 1.
[3] Plaintiff filed an interlocutory appeal of the PI Order on October 29, 2025, which remains pending at the Second Circuit. See ECF No. 36.

as-applied vagueness and First Amendment challenges. On Plaintiff's vagueness challenge, the Court held that New York's definition of "clearly identified candidate" is consistent with the Supreme Court's interpretation of that phrase in Buckley, 424 U.S. at 44, and its progeny. PI Order at 12-13. Moreover, the Court noted that the regulatory language Plaintiff primarily objected to as allegedly vague, see 9 NYCRR § 6200.10(b)(1)(ii)(c)(2), "expressly interprets the statutory phrase 'Advocates for or Against' a candidate and only that phrase." PI Order at 14. Because Plaintiff sought to air the proposed advertisements within 60 days of a general election, though, the operative statutory definition of "independent expenditure" required only a reference to a clearly identified candidate, see N.Y. Elec. L. § 14-107(1)(a)(iii), and "[t]he question of whether the advertisement 'advocates for or against' a clearly identified candidate would not be reached." PI Order at 16.

As to Plaintiff's First Amendment challenge, the Court held that because New York's independent expenditure statute only imposes disclaimer, registration, and disclosure requirements on communications that reference a clearly identified candidate in a future election, the statute does not reach pure issue advocacy. Id. at 17-18. As such, the Court found that New York's law, which serves to provide the electorate with information on election-related speech, comports with similar disclosure statutes that have survived "exacting scrutiny" by the Supreme Court and the Second Circuit. Id. at 19 (citing Citizens United, 558 U.S. at 371, and VRLC II, 758 F.3d at 134.

## STANDARD OF REVIEW

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Australia Bank

Ltd., 547 F.3d 167, 170 (2d Cir. 2008). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. Plaintiffs must meet their burden affirmatively, without "drawing from the pleadings inferences favorable to the party asserting it." Id.

A complaint also must be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, it is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id.

## ARGUMENT

### I.    All Claims Against the Governor and the Attorney General Should Be Dismissed

The Governor and the Attorney General, named as defendants in their official capacities, should be dismissed from this action because Plaintiff does not allege that they are directly involved in the enforcement of New York's independent expenditure statute. "[T]he vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." Warden v. Pataki, 35 F. Supp. 2d 354, 359 (S.D.N.Y.) (dismissing New York Governor in challenge to state statute), aff'd sub nom. Chan v. Pataki, 201 F.3d 430 (2d Cir. 1999); see also Ulrich v. Mane, 383 F. Supp. 2d 405, 410 (E.D.N.Y. 2005) (dismissing claims against Attorney General where, like here, plaintiff challenged the constitutionality of New York

7

Election Law provisions); <u>Mendez v. Heller</u>, 530 F.2d 457, 460 (2d Cir. 1976) (dismissing claims against Attorney General where he had "no connection with the enforcement" of statute in question).

Plaintiff's only allegation against the Governor is that she is "charged with the faithful execution of the laws of the State." Am. Compl. ¶ 29. Plaintiff does not allege the Governor is "responsible for administering" the challenged statutory provisions or "responsible for enforcing its penalties," relying entirely on "the general executive duty of the Governor." <u>Wang v. Pataki</u>, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001). But "[t]he Governor's general duty to execute the laws is not sufficient to make her a proper party in a suit challenging a state statute." <u>Goldstein v. Hochul</u>, 680 F. Supp. 3d 370, 384 (S.D.N.Y. 2023); <u>see also</u> <u>Jeannot v. New York State</u>, 762 F. Supp. 3d 217, 234 (E.D.N.Y. 2025) (collecting cases). Consequently, all claims against the Governor should be dismissed.

As to the Attorney General, Plaintiff alleges, confusingly, that she is "charged with the administration and enforcement of the Nonprofit Disclosure Provisions" (a term which is undefined and appears nowhere else in the Amended Complaint). Am. Compl. ¶ 30. Plaintiff provides no further support for this conclusory allegation. In any event, the Attorney General does not administer or enforce New York's independent expenditure statute; those duties are carried out by the BOE and the Chief Enforcement Counsel. <u>See</u> N.Y. Elec. L. §§ 3-104; 14-126. In its reply in support of preliminary injunction, Plaintiff argued that the Attorney General "has the primary enforcement responsibility for criminal violations of N.Y. Elec. L. § 14-107." ECF No. 21 at 14. But violations of the statute's disclaimer, registration, and disclosure requirements—the only obligations Plaintiff objects to—are subject to civil, not criminal, penalties. <u>See</u> N.Y. Elec. L. § 14-126(3) (violations of § 14-107(2)); <u>id.</u> § 14-107(8)(b)

8

(violations of §§ 14-107(3)-(4)). Moreover, even if Plaintiff had plausibly alleged potential criminal liability, the Attorney General may only act upon a referral from the Chief Enforcement Counsel. Id. § 3-104(5)(b) (providing that violations warranting criminal prosecution are to be referred "to the attorney general or district attorney with jurisdiction over such matter"). Accordingly, the Attorney General has no independent enforcement role and should be dismissed from this action. Ulrich, 383 F. Supp. 2d at 410; see also Chrysafis v. James, 534 F. Supp. 3d 272, 291 (E.D.N.Y. 2021) (holding that general provisions of New York Executive Law were insufficient to create a requisite connection between the Attorney General and enforcement of a particular statute).

II.     **Plaintiff Lacks Standing to Challenge New York Election Law's Definition of "Advocates for or Against"**

Plaintiff's claims must be dismissed on jurisdictional grounds to the extent they challenge the enforcement of N.Y. Elec. L. § 14-107(1)(a)(ii), along with the regulatory provisions interpreting the statutory phrase "advocates for or against." See 9 NYCRR §§ 6200.10(b)(1)(ii)(c)(1)-(4). The only category of "independent expenditure" that was directly applicable at the time Plaintiff filed this lawsuit, and thus the only provision Plaintiff has standing to challenge, is the more expansive definition found in § 14-107(1)(a)(iii), which encompasses all communications made within 60 days of a general election that "include[] or reference[] a clearly identified candidate." The narrower definition of "independent expenditure" in § 14-107(1)(a)(ii), which adds on the criterion of "advoca[cy] for or against" to the requirement of a clearly identified candidate, was irrelevant to the analysis of Plaintiff's proposed advertisements at the time Plaintiff commenced this action. Plaintiff thus lacks standing to challenge that category on either a facial or as-applied basis.

9

Article III standing is an "irreducible constitutional minimum" that any party invoking federal jurisdiction must establish. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). A plaintiff bringing a pre-enforcement challenge to a statute must demonstrate "that it 'has an actual and well-founded fear that the law will be enforced against' it." Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 382 (2d Cir. 2000) (quoting Virginia v. American Booksellers Ass'n, 484 U.S. 383, 393 (1988)); see also Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (standing requires that the threatened injury "is 'certainly impending,' or there is a 'substantial risk that the harm will occur'") (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)). This requirement is not relaxed for a First Amendment challenge claiming that a law is facially overbroad. See Brokamp v. James, 66 F.4th 374, 390 (2d Cir. 2023) (noting that the overbreadth doctrine "does not absolve the plaintiff of the initial obligation to plead the injury in fact required for standing"); Hedges v. Obama, 724 F.3d 170, 204 (2d Cir. 2013) (overbreadth "does not provide a reason to find [Article III] injury where none is present or imminently threatened in the first instance").

Standing is assessed at the outset of litigation. See Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) ("The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."); Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 70 (2d Cir. 2001) ("[S]tanding doctrine evaluates a litigant's personal stake as of the outset of litigation."); cf. Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (stating the "'general rule' that subject-matter jurisdiction turns on the facts upon filing"). Where a court

10

lacks jurisdiction over a claim at the commencement of a lawsuit, standing may not be retroactively conferred through the interposition of new claims or allegations. See Fund Liquidation Holdings LLC v. Bank of America Corp., 991 F.3d 370, 388-89 (2d Cir. 2021) (noting that defective jurisdiction may not be cured through amendment); West Hartford v. Operation Rescue, 915 F.2d 92, 95 (2d Cir. 1990) ("[A]n intervening claim cannot confer subject matter jurisdiction over the action it seeks to join.").

Plaintiff commenced this action on October 1, 2025, within the 60-day period before New York's November 4, 2025 general election. See Complaint, ECF No. 1. Plaintiff indicated that it intended to run its eleven proposed advertisements in advance of Election Day. See Am. Compl. ¶ 5 ("AFF would like to speak to New Yorkers on these important issues in the coming weeks . . . ."), ¶ 6 ("Some of the Proposed Advertisements also encourage all New Yorkers . . . to remember to vote."). Accordingly, and as this Court has already found, at the time of filing, whether Plaintiff's proposed advertisements constituted independent expenditures "would be analyzed under Section 14-107(1)(a)(iii)." PI Order at 15. That provision looks only to whether a communication "includes or references a clearly identified candidate." If so, "[t]he question of whether the advertisement 'advocates for or against' a clearly identified candidate would not be reached." Id. at 16. Likewise, the regulatory provisions Plaintiff challenges, which are expressly "[f]or purposes of determining that a communication is advocating for or against a candidate or ballot proposal," 9 NYCRR § 6200.10(b)(1)(ii)(c)(2) (emphasis added), have no bearing on the antecedent question whether a candidate is "clearly identified" in the first place, and are only applicable to the second category of independent expenditures, see N.Y. Elec. L. § 14-107(1)(a)(ii). To the extent State Defendants' PI Opposition cited both § 14-107(1)(a)(ii) and (iii) (and the Regulation's definition of "Advocates for or Against") in its discussion of Plaintiff's as-

11

applied challenge, the Court has since clarified the interplay of these provisions. In any event, State Defendants' argument that five of Plaintiff's proposed advertisements unambiguously referred to then-candidate Zohran Mamdani under § 41-107(1)(a)(iii) did not turn on whether the advertisements also "advocate[d] for or against" the candidate. See PI Opp. at 22 (arguing that the ads "clearly identify a specific candidate for a particular election through 'unambiguous reference[s]' to a characteristic that distinguishes the candidate from others in the election").

Plaintiff was thus unable to assert an "actual and well-founded fear," American Booksellers Ass'n, 484 U.S. at 393, that § 14-107(1)(a)(ii) and its regulatory interpretation would be enforced against it at the outset of this litigation—the relevant point in time for the purpose of assessing standing. "As the Supreme Court has observed, 'standing is not dispensed in gross.'" Brokamp, 66 F.4th at 389 (quoting Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996)) (holding that the plaintiff could not bring a pre-enforcement First Amendment challenge to licensing requirements that would not apply to her). Plaintiff's ability to challenge § 14-107(1)(a)(iii) "does not necessarily mean that [it] also has standing to challenge" the independent expenditure definition "that applies when [§ 14-107(1)(a)(ii)] comes into play." Davis, 554 U.S. at 733-34. And the Amended Complaint does not allege that Plaintiff intended to air its proposed advertisements after the November 4, 2025 election, much less after January 1, 2026, the point at which a communication must not only clearly identify a candidate, but also "advocate[] for or against" that candidate to be deemed an independent expenditure. Cf. id. at 734-35 (finding standing where a challenged statutory provision "would shortly burden" plaintiff). Finally, the fact that § 14-107(1)(a)(iii) is not currently in effect has no bearing on which provision Plaintiff had standing to challenge when it filed suit. Indeed, even though § 14-107(1)(a)(ii) will apply to

12

communications made after January 1, 2026, that cannot cure Plaintiff's initial jurisdictional deficiency. See Fund Liquidation Holdings LLC, 991 F.3d at 388-89.

Accordingly, the Court should dismiss Plaintiff's claims for lack of standing to the extent they challenge § 14-107(1)(a)(ii), as interpreted by 9 NYCRR § 6200.10(b)(1)(ii)(c)(1)-(4).

### III.     Plaintiff's As-Applied Claims Should Be Dismissed as Moot

Whatever standing Plaintiff possessed at the outset of this case, its as-applied challenge to New York's independent expenditure law is now moot because New York City's 2025 general election—the explicit focus of the proposed advertisements and the impetus for this lawsuit—has passed. A live controversy between the parties must exist not only at the time the complaint is filed, but through all stages of the litigation. See Alvarez v. Smith, 558 U.S. 87, 92 (2009); Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983).

Here, the Court can no longer provide Plaintiff any effective relief to redress its as-applied claim. Plaintiff sought declaratory and injunctive relief that would permit it to run a series of advertisements in New York City in advance of the 2025 general election. The text of the proposed advertisements, along with other allegations in the Amended Complaint, makes plain that Plaintiff's as-applied challenge was premised on a particular election that is now over. See Am. Compl. ¶ 45(d) (proposed advertisement stating "There's so much at stake this year" and urging audience to "vote at your earliest opportunity, in-person beginning on October 25"); ¶ 44 ("AFF would like a determination of its legal obligations . . . so that it is able to plan and implement its constitutionally protected political speech for the next month."), ¶ 59 ("Without an immediate ruling from this Court, AFF will not have the necessary time to plan its activities.");

13

see also PI Hearing Tr. 15:5-6 ("[T]he election is kind of what brings the discussion to the forefront of the conversation."). Moreover, the stated basis for Plaintiff's as-applied claim was Plaintiff's concern that Defendants would interpret the proposed advertisements as referring to a specific 2025 New York City mayoral candidate, Zohran Mamdani. See Am. Compl. ¶ 76 ("Socialism could certainly be deemed a 'distinctive feature' of Assemblyman Zohran Mamdani's platform in his campaign for mayor of the City of New York . . . ."). Because Plaintiff's as-applied challenge is inextricably linked to an election that has already taken place, the declaratory and injunctive relief Plaintiff seeks can no longer redress Plaintiff's specific grievance. Cf. Independent Party of Richmond Cnty. v. Graham, 413 F.3d 252, 256 (2d Cir. 2005) (finding case moot where it concerned election that had passed).

The exception to mootness for cases involving an issue capable of repetition yet likely to evade review does not apply here. That exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998). But Plaintiff's proposed advertisements are explicitly linked to the 2025 election, and in any event, the Amended Complaint gives no indication that Plaintiff intends to run the proposed ads (or any similar advertisement) in advance of future elections. Cf. National Organization for Marriage, Inc. v. Walsh, 714 F.3d 682, 692 (2d Cir. 2013) (finding exception to mootness where plaintiff's "complaint clearly alleges that the organization plans to do 'materially similar' advertising in 'materially similar situations in the future'"); Fed. Election Comm'n v. Wisc. Right to Life, Inc., 551 U.S. 449, 462 (2007) (same). The issues presented by Plaintiff's as-applied challenge are also unlikely to recur because of the context-dependence of the analysis. Determining whether the proposed advertisements in the

14

Amended Complaint unambiguously refer to a "clearly identified candidate" depends on who is running for office in the relevant election. For example, Zohran Mamdani is no longer a "candidate" as defined by statute. See N.Y. Elec. L. § 14-100(7) (defining "candidate" as an individual who has taken specific actions to seek office in a future election). Any challenge to the applicability of the independent expenditure law to Plaintiff's proposed advertisements would now effectively be a different claim, in the context of a different election, with a different slate of candidates. There is also no reason that a new as-applied challenge would evade judicial review. Plaintiff can, as it did here, file a timely lawsuit and seek an expedited resolution. See Freedom Party of N.Y. v. N.Y. State Bd. of Elec., 77 F.3d 660, 663 (2d Cir. 1996).

Plaintiff's as-applied challenge is too closely bound to the specific circumstances of the 2025 election for the exception to the mootness doctrine to apply. The Court should therefore dismiss it as moot.

## IV.    Plaintiff Fails to State a Claim for Facial Invalidation of New York's Definition of "Clearly Identified Candidate"

As State Defendants have previously explained, Plaintiff cannot show that the statutory phrase "clearly identified candidate," as used in § 14-107(1)(a), is unconstitutionally vague on its face. See PI Opp. at 7-15. Nor can Plaintiff establish that the statute's disclaimer, registration, and disclosure requirements, which are only triggered by a reference to a "clearly identified candidate," impose an impermissible burden on First Amendment activity. See id. at 15-20. Indeed, the Court has already held that New York's definition of "clearly identified candidate" is consistent with the independent expenditure regimes upheld in Buckley, 424 U.S. at 43, Citizens United, 558 U.S. at 369, and VRLC II, 758 F.3d at 133. See PI Order at 12, 18. Although the PI Order addressed the likelihood of success of Plaintiff's as-applied claims, its logic applies with

15

equal force to Plaintiff's facial challenge. As such, the Court should dismiss Plaintiff's facial

vagueness and First Amendment overbreadth claims.

### A.  The Phrase "Apparent by Unambiguous Reference" is Not Facially Vague

The void-for-vagueness doctrine "does not require meticulous specificity from every

statute, as language is necessarily marked by a degree of imprecision." Thibodeau v. Portuondo,

486 F.3d 61, 66 (2d Cir. 2007). "A facial vagueness challenge will succeed only when the

challenged law can never be validly applied." VRLC II, 758 F.3d at 128 (citing Vill. of Hoffman

Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)). Plaintiff fails to meet this

high bar because the plain statutory text identifies with sufficient clarity a core of regulated

speech, thus satisfying the requirements of due process.[4]

Under New York law, an independent expenditure must, regardless of the timing of the

communication, refer to a "clearly identified candidate." N.Y. Elec. L. §§ 14-107(1)(a)(i)-(iii).

The most expansive definition of "clearly identified candidate," and the one Plaintiff challenges,

covers communications where "the identity of the candidate is apparent by unambiguous

reference." Id. § 14-100(12)(c); see also 9 NYCRR § 6200.10(b)(3)(iii) (same). Boiled down,

Plaintiff's vagueness challenge amounts to the contention that the phrase "apparent by

unambiguous reference" means the opposite of what it says. But Plaintiff can only reach this

conclusion by importing language from the Regulation that explicates a different phrase,

---

[4] Plaintiff appears to concede this point, but argues that the definition of "clearly identified candidate" is still facially vague because there is a "wide swath" of allegedly vague applications. See Am. Compl. ¶ 71. However, this confuses vagueness, which is analyzed under the Due Process Clause, with First Amendment overbreadth. See Holder v. Humanitarian L. Project, 561 U.S. 1, 20 (2010) (holding that a due process "vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression" because otherwise the vagueness and overbreadth "doctrines would be substantially redundant"). Plaintiff's overbreadth claim is addressed below. See infra at 19-20.

16

"advocates for or against."[5] See Am. Compl. ¶¶ 69, 71; cf. 9 NYCRR § 6200.10(b)(1)(ii)(c)(1)

("Advocates for or Against means—in the absence of explicit words of advocacy for or against a

candidate or ballot proposal—that the expenditure, through the use of images, photos, or

language, promotes, supports, attacks, or opposes the Clearly Identified Candidate or ballot

proposal."). As the Court has held, the regulatory language in these provisions "'cannot

reasonably be understood—or misunderstood—to' displace the Statute's definition of 'clearly

identified candidate.'" PI Opp. at 15 (quoting Melendez v. City of N.Y., 16 F.4th 992, 1015 (2d

Cir. 2021)).

That definition requires, at minimum, a reference to a candidate that is unambiguous—in

other words, a reference that, in the context of a particular election, cannot be reasonably

interpreted in any other way, even in the absence of an express reference to the candidate's name

or likeness. On its face, then, New York's definition of "clearly identified candidate" is

coextensive with the federal definition upheld in Buckley.  See Buckley, 424 U.S. at 43 & n.51.

Plaintiff complains that New York's definition does not further limit "unambiguous reference" to

"initials, nickname, title, office, or status as a candidate." Am. Compl. ¶ 13. But Footnote 51 in

Buckley, the source of this list, provides no indication that these are the exclusive means by

which a candidate may be "unambiguous[ly] reference[d]." Buckley, 424 U.S. at 43 n.51 (noting

that an "unambiguous reference would include" the candidate's initials, nickname, office, or

---

[5] Even if the first factor in 9 NYCRR § 6200.10(b)(1)(ii)(c)(2), which refers to identification of a candidate by "other means such as party affiliation or distinctive features of a candidate's platform or biography," can be read as providing examples of an "unambiguous reference," those examples lie within the confines of the controlling statutory requirement that any reference must be "unambiguous." See PI Opp. at 11 (analyzing the text of the regulatory phrase "distinctive features of a candidate's platform"). And the fourth factor, which asks "whether the issue raised in the communication has been raised as a distinguishing characteristic amongst the referenced candidates," presupposes that a candidate has already been "referenced." See id. at 12.

17

status as a candidate) (emphasis added). Other courts have found that the phrase "apparent by unambiguous reference" has a clearly ascertainable meaning that is not limited to the Buckley examples. See Hispanic Leadership Fund, Inc. v. Fed. Election Comm'n, 897 F. Supp. 2d 407, 427 (E.D. Va. 2012) ("[T]he ordinary and unambiguous meaning of the phrase 'the identity of the candidate is apparent by unambiguous reference,' is that the identity of the federal candidate would be apparent, i.e., clear to a reasonable, objective person viewing the advertisement in the context of the reference."); Fed. Election Comm'n v. Cal. Democratic Party, No. CIVS030547, 2004 WL 865833, at *6 (E.D. Cal. Feb. 13, 2004) (noting that "the Court in Buckley made clear that analyzing whether there is an 'unambiguous reference to a clearly identified candidate' is not restricted to the four corners of a communication; several of the examples provided in Buckley of 'unambiguous' references require context to resolve an ambiguity").

Even if there is some ambiguity at the margins as to the meaning of "unambiguous reference," basic canons of statutory construction counsel in favor of construing the phrase to avoid constitutional vagueness problems. See, e.g., 1256 Hertel Ave. Assocs., LLC v. Calloway, 761 F.3d 252, 260-61 (2d Cir. 2014); see also Kolender v. Lawson, 461 U.S. 352, 355 (1983) ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered."). Moreover, Plaintiff's speculative allegations about how New York's definition of "clearly identified candidate" may apply in hypothetical cases, Am. Compl. ¶¶ 72-73, are insufficient to render the definition facially invalid. As the Second Circuit has explained, there are often so-called "edge" cases, but laws "are not impermissibly vague simply because it may be too difficult to determine whether marginal cases fall within their scope." United States v. Sun & Sand Imports, Ltd., Inc., 725 F.2d 184, 187 (2d Cir. 1984). Nor can "a finding of unconstitutional vagueness . . . be based

18

on . . . a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges to the [law] as applied." Levas & Levas v. Vill. of Antioch, 684 F.2d 446, 451 (7th Cir. 1982). Indeed, that judges may reasonably disagree about whether a statute applies in any given hypothetical does not render a statutory proscription unconstitutionally "shapeless" for due process purposes because "even clear rules produce close cases." Salman v. United States, 580 U.S. 39, 51 (2016).

At bottom, the statutory phrase "apparent by unambiguous reference" provides "the person of ordinary intelligence a reasonable opportunity to know" the applicable legal standard. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Plaintiff cannot plausibly allege that the definition of "clearly identified candidate" lacks any intelligible principle, as is required for a facial void-for-vagueness challenge. Vill. of Hoffman Estates, 455 U.S. at 495. Plaintiff's Fourteenth Amendment claim should therefore be dismissed.

### B. New York's Independent Expenditure Requirements Are Not Facially Overbroad

New York's disclaimer, registration, and disclosure requirements for the makers of independent expenditures do not, by definition, reach "issue advocacy untethered to" a reference to a clearly identified candidate. Citizens Union of City of N.Y. v. Att'y Gen. of N.Y., 408 F. Supp. 3d 478, 508 (S.D.N.Y. 2019). As such, the requirements Plaintiff challenges as facially overbroad fit comfortably within the First Amendment parameters set forth in Buckley, Citizens United, and VRLC II. Plaintiff acknowledged as much at oral argument. See PI Hearing Tr. at 12:1-4 ("If the New York law is using the established definition of "clearly identified candidate," the Buckley definition, then sure, it would be upholdable . . . ."). Because Plaintiff cannot show that the independent expenditure law's potential "unconstitutional applications substantially outweigh its constitutional ones," Moody v. NetChoice, LLC, 603 U.S. 707, 724 (2024), the

19

Court should not employ the "strong medicine" of facial invalidation, Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973).

As the Court has recognized, New York has a substantial interest in "providing the electorate with information about the sources of election-related spending." Citizens United, 558 U.S. at 367. The disclaimer, registration, and disclosure provisions of §§ 14-107(2)-(4) are closely related to this important interest because they "only apply during a campaign for public office" and only reach communications that refer to an "actual candidacy." VRLC II, 758 F.3d at 133. They are therefore analogous to the Vermont statutes upheld by the Second Circuit as "within the scope of regulation permitted under Citizens United," and survive the "exacting scrutiny" test applicable to disclosure regimes. Id.; see PI Opp. at 16-19; PI Order at 19.

Plaintiff alleges that the independent expenditure statute is overbroad because it "could reach a substantial number of genuine issue advertisements, as compared to . . . legitimate applications to speech that unambiguously references a clearly identifiable candidate." Am. Compl. ¶ 89. But any imposition of the statutory requirements on pure issue advocacy would contravene the plain text of the statute, which demarcates a clear "legitimate sweep" of applications. Broadrick, 413 U.S. at 615; see also Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 ("[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."). Plaintiff has not shown that the statutory text can realistically extend to unconstitutional applications, much less that the number of such applications is "substantially disproportionate to the statute's lawful sweep." United States v. Hansen, 599 U.S. 762, 770 (2023). Nor, given the statute's lack of vagueness, see supra at 15-19, has Plaintiff plausibly alleged a risk that a substantial amount of pure issue speech will be chilled for fear of falling within the statute's

20

"ambiguous scope." <u>Farrell v. Burke</u>, 449 F.3d 470, 497 (2d Cir. 2006). Accordingly, "in the absence of a lopsided ratio," challenges to New York's independent expenditure requirements must be brought on an as-applied, rather than facial, basis. <u>Hansen</u>, 599 U.S. at 770. The Court should dismiss Plaintiff's facial First Amendment claim.

## CONCLUSION

For the reasons set forth above, State Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice pursuant to Fed R. Civ. P. Rules 12(b)(1) and 12(b)(6).

Dated: New York, New York
December 18, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
<u>Attorney for State Defendants</u>

By:    /s/ Patrick A. Baker
Patrick A. Baker
Roderick L. Arz
Assistant Attorneys General
28 Liberty Street
New York, New York 10005
(212) 416-8906
patrick.baker@ag.ny.gov
roderick.arz@ag.ny.gov

21

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

In accordance with Rule 7.1(c) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that this memorandum of law contains 6,424 words, exclusive of the caption, table of contents, table of authorities, and signature block, and complies with the word count limit in that Rule, as established using the word count function of Microsoft Word.

           _/s/_ Patrick A. Baker_____
           Patrick A. Baker